809 So.2d 265 (2001)
Clifford McCRAY
v.
DELTA INDUSTRIES, INC. and Travelers Property Casualty Corporation.
No. 2000 CA 1694.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*267 Vijay Venkataraman, Baton Rouge, Michael B. Forbes, Hammond, Counsel for Appellant Clifford McCray.
Mark S. Taylor, Metairie, Counsel for Appellee Delta Industries, Inc. & Travelers Property Casualty Corp.
Before: FOIL, PETTIGREW and KLINE[1], JJ.
KLINE, Judge.
In this workers' compensation case, an employee appeals the dismissal of his claim against his employer for additional benefits. For the following reasons, we reverse and remand.

*268 FACTS AND PROCEDURAL HISTORY
Clifford McCray was employed by defendant Delta Industries, Inc. (Delta) as a cement truck driver.[2] On July 17, 1998, Mr. McCray was involved in an accident when he lost control of the cement truck he was driving and veered off the road. He had been employed since 1995. When the truck crashed, the drum came to rest on the cab, trapping Mr. McCray inside the wreckage for approximately two and a half hours. The magnitude of the damage is reflected in exhibit photos. As a result of the accident, Mr. McCray sustained a number of injuries, including a closed head injury with loss of consciousness, facial fractures, a right orbital "blow out" fracture, and a knee injury. Plaintiff also claims to have sustained a back and/or neck injury[3] in the accident.
Mr. McCray received workers' compensation benefits through December 2, 1998, amounting to $4,818.68, and medical benefits were paid in the amount of $31,263.00.
On July 16, 1999, plaintiff filed a claim with the Office of Workers' Compensation (OWC) against his employer, Delta, and its insurer, Travelers Property Casualty Corporation (Travelers), for continued treatment, diagnostic testing, and temporary total disability. Following a hearing before the OWC, judgment was rendered in defendants' favor, dismissing plaintiff's claims. Plaintiff has appealed this judgment and alleges the OWC erred: in crediting the testimony of Dr. Trahant over Dr. Olsen; in concluding plaintiff did not sustain a compensable back and/or neck injury; in failing to order MRI, EMG, and nerve conduction studies; in failing to find defendants were arbitrary and capricious for not providing MRI, EMG, and nerve conduction studies; in denying continuing benefits for temporary total disability; and for ordering payment of only the first $750.00 of non-approved treatment by Dr. Olson.

ANALYSIS
Plaintiff alleges that he is entitled to continued treatment, diagnostic testing, and temporary total disability benefits because he has not yet reached maximum medical improvement. He bases this contention on his continued suffering from a back and/or neck injury and the fact that the OWC judge relied upon only plaintiff's injury and treatment of his knee in rendering a decision.
An employee seeking temporary total disability benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of the nature or character of the work, including but not limited to employment while working in pain. La. R.S. 23:1221(1)(c). The "clear and convincing" standard is a heavier burden of proof than the usual civil case standard of "preponderance of the evidence" but is less burdensome than the "beyond a reasonable doubt" standard of a criminal prosecution. Chatelain v. State, Department of Transportation and Development, 586 So.2d 1373, 1378 (La.1991). Therefore, to prove a matter by "clear and convincing" evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. Fritz v. Home *269 Furniture-Lafayette, 95-1705, p. 3 (La. App. 3rd Cir.7/24/96), 677 So.2d 1132, 1134. Also, to carry the burden of proving disability by clear and convincing evidence, the claimant must introduce objective medical evidence of the disabling injury. Id.
Disability can be proven by medical and lay testimony. The trial court must weigh all the evidence, medical and lay, in order to determine if the plaintiff has met his burden. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993).
In the instant case, the OWC judge stated that his determination that plaintiff had reached maximum medical improvement and could return to work was based upon the injury to plaintiff's knee and the treatment of his knee thereafter. The OWC judge indicated that the record was largely silent as to plaintiff's subjective complaints of an injury to his back or head and that based upon Dr. Trahant's report, plaintiff did not appear to suffer those injuries. In each of plaintiffs assignments of error, the issue to be determined is whether there is evidence to support plaintiff's contention that he did in fact suffer an injury to his back and/or neck.
The OWC gave his judgment on April 6, 2000 dismissing plaintiff's claim for the following reasons:
After hearing argument of Counsel, observing the witnesses upon examination, review of the medical reports and deposition, the Court concludes the Law and Evidence illustrates the claimant reached maximum medical improvement on or about December 1998 as to his knee injury. The weight of medical evidence [reveals] the claimant could return to his previous employment at that time. Throughout his treatment and examinations prior to December of 1998, the claimant testified he reported complaints of back and/or neck pain. However, the medical records are largely silent as to these subjective complaints. Never-the-less [sic], the defendant authorized an examination with its' choice of neurologist, Dr. Trahant, who concluded [there exists] no neurological or objective abnormalities.
Louisiana jurisprudence is clear that in workers' compensation cases, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737; Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La. 1992); Washington v. Lyons Specialty Company, 96-0263, p. 6 (La.App. 1st Cir.11/8/96), 683 So.2d 367, 372, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. A court of appeal may not set aside a hearing officer's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Freeman v. Poulan/Weed Eater, 630 So.2d at 737; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Washington v. Lyons Specialty Company, 683 So.2d at 372. The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Vargas v. Daniell Battery Manufacturing Company, Inc., 93-1249, p. 8 (La.App. 1st Cir.5/20/94), 636 So.2d 1194, 1198. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; *270 Rosell v. ESCO, 549 So.2d at 844; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Vargas v. Daniell Battery Manufacturing Company, Inc., 636 So.2d at 1198.
Upon review of the medical records of the different physicians involved in treating plaintiff, we recognize that Dr. Nancy Mellin treated plaintiff immediately after he was transported from the accident site to the hospital specifically for an orbital blowout fracture and multiple fractures of the right side of the face. She performed emergency surgery to remedy these fractures.
While in the hospital, plaintiff was seen by Dr. John Fambrough, an orthopedic surgeon. According to Dr. Fambrough, he was consulted and informed by Dr. Mellin that plaintiff was suffering from knee injuries. Upon Dr. Fambrough's initial examination of the knee, he noted that the knee was swollen and that there was tenderness about the knee. Dr. Fambrough noted the MRI scan of plaintiff's knee revealed a partial tear of the menisci, a bone contusion and a ligamentum strain. He treated plaintiff's knee conservatively for approximately three months. Plaintiff was prescribed physical therapy three times a week for four weeks. On September 21, 1998, plaintiff returned to Dr. Fambrough ahead of his scheduled appointment with complaints of continued pain in his right knee and that his right knee was giving way. Dr. Fambrough thought that plaintiff had developed a complete tear of the posterior horn of his lateral meniscus. He performed arthroscopic knee surgery on October 6, 1998, finding damage to the ligaments in plaintiff's knee and removing cartilage in the knee. Afterwards, plaintiff was prescribed more physical therapy.
A month later, plaintiff still complained of pain and stiffness of his knee. He informed Dr. Fambrough that he would not be able to return to work because his job of working on the cement truck required him climbing up and down the truck. Dr. Fambrough prescribed a work hardening physical therapy program for three weeks, which did not alleviate plaintiff's complaints. Thereafter, on December 2, 1998, Dr. Fambrough determined that plaintiff had reached maximum medical improvement and released him to return to work at full duty status. Based upon Dr. Fambrough's release, Delta discontinued plaintiffs benefits.
When questioned during his deposition about plaintiffs complaints of back or head injury, Dr. Fambrough initially indicated that his notes did not reflect that plaintiff complained to him of back or head injuries. However, he recalled, on cross examination, that plaintiff had complained of back injuries, though he did not examine or treat plaintiff for such injuries. Nevertheless, a physical therapy progress report dated August 28, 1998, suggested that plaintiff complained of back pain to Dr. Fambrough and that Dr. Fambrough made a notation to treat plaintiffs back and knee five times a week for two weeks. Ultimately, Dr. Fambrough based his conclusion that plaintiff had reached maximum medical improvement only on his treatment of plaintiffs knee. Dr. Fambrough testified that he would defer to a neurologist for any treatment of a head injury.
Plaintiff continued to complain of pain and did not feel that he could return to work as a cement truck driver. On January 8, 1999, one month after Delta discontinued plaintiffs benefits, Dr. Habig, an orthopedic surgeon, examined plaintiff at Delta's request. Upon physical examination of plaintiffs knee, Dr. Habig found laxity in the knee joint and muscular atrophy. This finding was contrary to that of Dr. Fambrough, who, during the last visitby *271 plaintiff, found no laxity in the knee joint or atrophy of the muscle.
According to Dr. Habig, it was uncertain whether plaintiff could return to work as a cement truck driver. He felt it advisable to have plaintiff undergo functional capacity testing to evaluate his condition. Delta hired a functional capacity evaluator to determine whether plaintiff could in fact return to work. The evaluator stated that plaintiffs job duties were medium in physical demand, based on information supplied by Delta. The evaluator stated that plaintiff gave maximum effort and did not display symptom magnification. Despite plaintiffs effort, limitations were noted with bending, squatting, kneeling, crawling, prolonged sitting, prolonged standing, extended walking, and ladder climbing. The report notes back and knee pain throughout the testing. Considering the functional capacity evaluation and the job description as supplied by Delta, Dr. Habig determined that plaintiff had reached maximum medical improvement and that he could return to work. Dr. Habig felt that continued strengthening exercises would be appropriate. Dr. Habig did not examine or treat plaintiffs back, neck, or head.
On April 15, 1999, plaintiff sought treatment from Dr. Olson, a neurologist. Dr. Olson testified that plaintiff complained of back pain with radiation into both legs, neck pain with radiation into the right arm, and headaches, which began after the July 17, 1998 accident. Dr. Olson stated that he believed the complaints were related to the July 17, 1998 accident. Dr. Olson's initial impression was that plaintiff suffered not only the orbital fracture and the knee injury in the accident, but that he also suffered back, neck, and head injuries. Dr. Olson stated that plaintiff complained of headaches and "grayouts."[4] It was the opinion of Dr. Olson that to evaluate and treat plaintiff further, psychological tests, an MRI, or a brain scan should be administered. With respect to plaintiffs back injury, Dr. Olson opined that complaints of back pain in this case are not unusual considering the nature of the accident and the fact that plaintiff suffered a knee injury. He explained that when one joint is lost, as in this case with plaintiffs injured knee, added stress is placed on the other joints in the body, such as the back. Dr. Olson also thought that plaintiff needed a lumbar MRI scan and EMG and nerve conduction studies of his lower extremities. Dr. Olson observed in plaintiff, with respect to his neck, symptoms of soft tissue injury, for which an MRI scan would also be appropriate. Dr. Olson did not think that plaintiff had reached maximum medical improvement with respect to all of the injuries suffered in his accident, and indicated that plaintiff requires further treatment. Dr. Olson disagreed with the findings of Dr. Fambrough and Dr. Habig that plaintiff is able to return to his previous position as a cement truck driver.
In November 8, 1999, after undergoing eight months of treatment by Dr. Olson, Delta requested that Dr. Trahant, also a neurologist, examine plaintiff. At trial, defendant introduced a three-page letter, written by Dr. Trahant, addressed to the medical case manager at Travelers. In this letter, Dr. Trahant indicated that upon neurological examination of plaintiff, he found the results to be entirely normal. Dr. Trahant's examination revealed no evidence of any significant neurological injury to plaintiffs head, cervical or lumbar spine. Dr. Trahant further stated that he found no injury that would prevent plaintiff from working.
*272 Plaintiff urges this court to find the OWC erred in overlooking evidence presented regarding his back and/or neck injury and in giving more weight to the report of Dr. Trahant rather than that of plaintiff's treating physician, Dr. Olson. The only physician who treated plaintiff for his back and head injury was Dr. Olson, a neurologist. Dr. Olson treated plaintiff for eight months, and confirmed plaintiff's complaints of pain. According to plaintiff, Dr. Olson's treatment has been limited to pain management through pain medications. Dr. Olson felt additional testing necessary to ascertain the extent of injury as well as to suggest future treatment options.
Other than Dr. Olson, Dr. Trahant was the only neurologist who examined plaintiff. Dr. Trahant examined plaintiff once at Delta's request. Dr. Trahant's opinion consisting of a mere three-page letter directed to Delta's insurer, Travelers, was completely contrary to that of Dr. Olson.
Experts' testimony may be given differing weights depending on their qualifications and the facts upon which their opinions are based. Ponthier v. Vulcan Foundry, Inc., 95-1343, p. 3 (La.App. 1st Cir.1996), 668 So.2d 1315, 1317. The general jurisprudential rule is that a treating physician's opinion is given more weight than a non-treating physician. Orgeron v. Prescott, 93-926, p. 10 (La.App. 5th Cir.4/14/94), 636 So.2d 1033, 1041, writ denied, 94-1895, (La.10/28/94), 644 So.2d 654; Wells v. Allstate Insurance Company, 510 So.2d 763, 767 (La.App. 1st Cir.), writ denied, 514 So.2d 463 (La.1987). The trial court, however, is not bound to accept the testimony of an expert whose testimony is presumptively given more weight if he finds the opinion is less credible than that of other experts. Ponthier v. Vulcan Foundry, Inc., 668 So.2d at 1317.
In this case, Dr. Olson and Dr. Trahant had widely disparate conclusions. Both physicians are neurologists. Both were qualified in education, training, and experience to give an opinion regarding plaintiffs alleged back and/or neck injury and whether he had reached maximum medical improvement. However, more weight should have been given to the testimony of Dr. Olson, over the written statement of Dr. Trahant, absent some indicia of unreliability. The OWC judge placed great emphasis on the absence of complaint by plaintiff of back and/or neck injury. However, the record reveals plaintiff first complained of back pain as far back as August 28, 1998, as evidenced by the physical therapy report signed by Dr. Fambrough prescribing treatment for plaintiff's back. This was only one and a half months after the accident. Plaintiff complained of back pain during a number of these therapy sessions prescribed by Dr. Fambrough, approximately three months into treatment after the accident. There is also evidence that plaintiff complained of back pain in January of 1999, while under Dr. Habig's care, as noted in the report by the functional capacity evaluator.
In light of the severity of the crash and multiple injuries requiring surgical intervention, it is not unreasonable that attention to plaintiff's complaints of back pain may have been overlooked or minimized. Therefore, we find that the OWC judge erred in according more weight to Dr. Trahant's report than to the testimony of Dr. Olson. We also find that the record supports a finding that plaintiff did complain and suffer with back and/or neck injury, contrary to the conclusion of the OWC judge.
Plaintiff contends that Delta and Travelers were arbitrary and capricious in failing to provide plaintiff with MRI scanning and EMG and nerve conduction *273 studies of the lower extremities recommended by Dr. Olson. Louisiana Revised Statutes 23:1203(A) provides, in part:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.
Under La. R.S. 23:1203, a worker's medical expenses are compensable only if they are occasioned by the work-related injury. Charles v. Aetna Casualty and Surety Company, 525 So.2d 1272, 1275 (La.App. 3rd Cir.), writ denied, 531 So.2d 480 (La. 1988). To recover medical expenses under La. R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Weller v. Brown, 97-2155, p. 12 (La.App. 1st Cir.11/6/98), 724 So.2d 230, 236.
Plaintiff also argues that the trial judge erred in awarding only $750.00 of nonapproved treatment by Dr. Olson. La. R.S. 23:1121(B) provides, in part:
The employee shall have the right to select one treating physician in any field or specialty.... After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
While a claimant has the right to select one treating physician in any field or specialty under La. R.S. 23:1121(B), the treatment must be necessary under La. R.S. 23:1203(A) in order for the employer to be responsible for those expenses. Scott v. Piccadilly Cafeteria, 97-1584, p. 5 (La. App. 3rd Cir.4/1/98), 708 So.2d 1296, 1299.
Since we find herein that plaintiff suffered a compensable injury to his back and/or neck, the award of only $750.00 for treatment by Dr. Olson is reversed, and defendants are ordered to pay for plaintiffs medical treatment in this regard. We remand the matter to the OWC for a determination of the amount, and a redetermination on the issue of medical maximum improvement and temporary total disability in light of the test results to be reviewed upon completion of the medical testing ordered by Dr. Olson.
We cannot, however, conclude that Delta was arbitrary and capricious in denying compensation for the back and/or neck injuries. Penalties are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 16 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 24. A claim is reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Id. An employee has the burden of proving his entitlement to statutory penalties. Id.
At the time that Delta decided to stop paying benefits, a report had been obtained from Dr. Fambrough stating that no reason existed that prevented plaintiff from working. A separate report drawing a similar conclusion was obtained from Dr. Habig. Although Dr. Olson and Dr. Trahant gave very different opinions as to plaintiffs condition, Dr. Trahant's report reasonably controverted plaintiffs claim of a back and/or neck injury. Therefore, neither *274 Delta nor Travelers were arbitrary or capricious for failing to paying additional compensation.

CONCLUSION
Accordingly, the judgment of the OWC is affirmed, in part, insofar as penalties and attorney fees were denied, and the judgment is reversed, in part, to the extent recovery of medical expenses and continued treatment for plaintiffs back, neck, and head injuries were denied. The case is remanded for determination of the amount of medical expenses to be reimbursed and for further proceedings consistent with the foregoing. All costs of this appeal are to be borne by defendants/appellees, Delta Industries Inc. and Travelers Property Casualty Corporation.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The employer is on occasion referred to as Amite Ready Mix; however, the parties stipulated that he was employed by Delta and in the course and scope of employment, at the time of the accident.
[3] At various instances, plaintiff refers to the disputed injuries as "back and/or neck" and "back and head."
[4] Grayouts, according to Dr. Olson, are a hiatus of the memory.