2McClendon, J.
This appeal arises from an action for workers’ compensation that was denied. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
In March of 1997, Donald Gonzales, a mechanic’s helper, was working at the Pioneer Chemical plant in St. Gabriel, Louisiana, for J.E. Merit Constructors, a subsidiary of Jacobs Engineering Group, Inc. (hereinafter “employer”). Mr. Gonzales alleged that on Friday, March 21, 1997, he was summoned by his supervisor, Ronnie Little, to help some other workers lift the cover off of a conveyor belt located on the plant’s dock, alongside the Mississippi River. There was a crane that ran on a rail near the conveyor belt and as plaintiff positioned himself to lift the cover, other workers yelled at him that the crane was approaching his position. Immediately thereafter, plaintiff either fell or sat down on or near the approaching crane’s rail. A co-worker, Troy Johnson, pulled plaintiff out of harm’s way. No accident report was filed at the time by the employer.
On or about March 31, 1997, plaintiff was terminated from his employment. Ronnie Little testified that the company needed a mechanic rather than a mechanic’s helper for the position occupied by plaintiff and that plaintiff was fired for this reason.[2]
Plaintiff sought medical treatment the Monday following his termination with his family physician, Dr. Caro, and thereafter with Dr. John Re'aux, complaining of a head injury, neck, back, and arm pain.
On May 20, 1997, plaintiff filed a claim for workers’ compensation with the Office of Workers’ Compensation Administration (hereinafter “OWC”). A hearing was held before an OWC judge on April 15, 1998, and |3the matter was taken under advisement. On July 7, 1999, while the case was *74 under advisement, plaintiff filed a “Motion for Contradictory Hearing Pursuant to La R.S. 23:1310.8.”[3] As the original OWC judge had been transferred to another district, a second OWC judge heard argument on this motion on July 23, 1999; a ruling was made that the matter should be referred to the original OWC judge, who had not yet rendered judgment on the original claim for compensation.
Judgment was signed on January 31, 2000 by the first OWC judge, denying plaintiffs claims.[4] Plaintiff then appealed this judgment and on appeal asserts the following assignments of error:
(1) The [OWC] committed manifest error and was clearly wrong in failing to consider the contradictory motion filed by the claimant pursuant to La. R.S. 23:1013.8A(1) submitting the neuropsy-chological [evaluation of Dr. Wm. Drew Gouvier, establishing trauma induced brain injury.
(2) The [OWC] committed manifest error, and was clearly wrong in its finding, that claimant failed to prove that he was involved in an accident.
(3) The [OWC] committed manifest error, and was clearly wrong, in failing to award temporary total disability or, in the alternative, supplemental earnings benefits, inclusive of medical bills.
DISCUSSION AND ANALYSIS

Entitlement to Workers’ Compensation

An employee who receives personal injury by accident arising out of and in the course of his employment shall be paid compensation, if not otherwise eliminated from by the workers’ compensation provisions, by his employer in the amounts, on the conditions, and as designated by LSA-R.S. |423:1021 et seq. See LSA-R.S. 23:1031. “Accident” means “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” LSA-R.S. 23:1021(1) (emphasis added).
The employee who claims a right to collect workers’ compensation benefits has the burden of proving a work-related accident by a preponderance of the evidence. Bolton v. B E & K Construction, 2001-0486, p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35; Catchot v. RAMCO Construction, 2000-1922, pp. 2-3 (La.App. 1 Cir. 11/14/01), 818 So.2d 105, 107, citing Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
In the instant case, the OWC judge found that Mr. Gonzales did not establish that he had suffered an injury as a result of the incident that occurred on March 21, 1997; his written reasons on this point were as follows:
Even if this Court had found that Gonzales had a work-related accident on March 21, 1997, which it specifically does not, the Court finds that Gonzales suffered no injury which was disabling. *75 He finished the day and even worked one hour overtime without visible sign [or] symptom of injury. He denied to his supervisor and one other employee that he was hurt. He sought no medical treatment until after he was laid off. The only diagnostic testing ever done of his head in this whole proceeding was completely negative.
On appeal, the factual findings of an OWC judge are subject to the same standard of review as in other cases; i.e., a trial court’s finding of fact may not be set aside on appeal unless there is no reasonable factual basis for the finding and the finding is clearly wrong (manifestly erroneous). See Bolton v. B E & K Construction, 2001-0486 at p. 7, 822 So.2d at 35; McCray v. Delta Industries, Inc., 2000-1694, p. 4 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 269. See also Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Consequently, when there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Bolton v. B E & K Construction, 2001-0486 at p. 7, 822 So.2d at 35, citing Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990).
At the trial of this matter, the plaintiff, Donald Gonzales testified that on the date in question, Friday, March 21, 1997, while going about his work duties around 8:30 a.m., he was asked by his supervisor to report to the “dock” to help lift a cover off a conveyor belt. Along -with other workers, Mr. Gonzales positioned himself near the conveyor cover, but when the order to lift was given, he stated that he did not lift, because someone had “hollered.” As he turned to see what the alarm was about, Mr. Gonzales stated that his body did a “45 degree pivot with [his] feet, and [he] turned the top part of [his] body.” It was then that Mr. Gonzales said he saw the crane counterweight, which he claims hit him in the head within a second and jerked his neck back. Mr. Gonzales further testified that he was immediately knocked off balance and felt like he was going to fall. He stated, “I did not resist the fall. I just went down ... in that position... .1 was scared [sic] to hit my head, so I remember with my left hand, hitting my hat to keep my hat on my head, and I hit the ground.”[5] Mr. Gonzales testified that he was disoriented and felt himself being jerked clear of the crane. Although, plaintiff testified that the crane was “swinging” when it hit him, other | fiwitnesses testified that the crane was mechanically incapable of both “swinging” and moving (either forward or backward) simultaneously.
Mr. Gonzales reported that immediately after the incident, he went and sat down in the supervisor’s office, but no one came and asked him if he was injured. Later that morning, he was asked to work past his usual 11:00 a.m. quitting time. Mr. Gonzales said that he agreed to work longer, but told his supervisor that he was not going to order lunch because he was nauseated. Mr. Gonzales left work around 12:00 p.m. and testified that he developed a headache. Over the weekend, Mr. Gonzales was not scheduled to work; he testified that during this time his neck was stiff and that he could feel a lump on his lower neck “on the spine.”
Mr. Gonzales testified that when he returned to work the following Monday (March 24, 1997), his neck was “real stiff” and he felt tired and fearful. Mr. Gon *76 zales said he attempted to talk to Ronnie Little about his injury when he went to work on Tuesday, but their conversation was interrupted by a telephone call to Mr. Little. Mr. Gonzales continued to work that week, and on Thursday, he testified that he attended a safety meeting, during which he asked Ronnie Little if they were going to discuss his accident or whether it was a secret. Mr. Gonzales testified that he was told that it had been taken care of. After being off work the next few days (Friday, Saturday, and Sunday), Mr. Gonzales returned to work on Monday (March 31, 1997) and was fired by Mr. Little, who told him they no longer needed his services. Mr. Gonzales stated his headaches were “still prevalent because [he] was still taking Tylenol to help [him.]” However, it was not until Monday (April 7, 1997), one week after his termination by the defendant/employer, that plaintiff sought treatment from his family 17physician, Dr. Caro. Later, on April 17, 1997, plaintiff was referred to Dr. John Re'aux, by his attorney.
Troy Johnson, one of plaintiffs co-workers, testified that he was on the dock with plaintiff on the day of the incident, and called out to plaintiff because the crane was moving toward plaintiff. Mr. Johnson testified that he saw plaintiff seemingly just sit down on the rail. When plaintiff did not appear to move out of the path of the approaching crane, Mr. Johnson stated that he grabbed plaintiffs arm and pulled him out of harm’s way. Mr. Johnson did not think that the crane hit plaintiff. Mr. Johnson recalled asking whether plaintiff was hurt, but never inquired as to what caused plaintiff to sit down on the rail. Although Mr. Johnson did not testify as to what plaintiff said immediately after the accident, Mr. Johnson did say that when he talked to plaintiff the next day, plaintiff did not indicate that he had been hurt.
Another of plaintiffs co-workers, Freddie Hebert, testified that plaintiff was his mechanic’s helper in the mechanic shop at the chemical plant. Although Mr. Hebert did not witness the incident on the dock, when plaintiff returned to the mechanic’s shop, Mr. Hebert testified that plaintiff exclaimed to him that he had almost been killed. Mr. Hebert stated that plaintiff related the incident to him as occurring when the crane “shov[ed] [plaintiff] down between the conveyor belt and the crane.” Plaintiff complained to Mr. Hebert that Mr. Johnson was the only one who had asked if he was hurt. Since plaintiff appeared to Mr. Hebert to be “in a shock” and preoccupied, Mr. Hebert testified that he gave plaintiff only light assignments over the next few days. On the Monday following the incident, Mr. Hebert asked plaintiff if he felt bad and needed to go home; plaintiff responded negatively and said he would work. Mr. Hebert further testified |sthat he observed that plaintiff continued to look worried and nervous pri- or to his termination, and that plaintiff had complained to him about his arm and neck being stiff.
Ronnie Little, plaintiffs supervisor, testified that he was present at the time of the incident, and saw plaintiff sit down on the rail as the crane approached his position. Mr. Little stated that he saw Mr. Johnson pull plaintiff to safety and heard Mr. Johnson ask plaintiff whether he was okay. Mr. Little said that plaintiff responded, “Yes.” It did not appear to Mr. Little that plaintiff had been struck by the crane; however, he admitted he could not be sure. Mr. Little also testified that plaintiff did not ask him for medical treatment, and that if he had, it would not have been denied.
Plaintiffs wife, Mrs. Viola Gonzales, testified that when plaintiff returned home from work on the day in question, he *77 almost fell down getting out of his truck and that he was very pale. Plaintiff reported to her that he had almost been killed by a crane at work. He refused to go to the doctor, so Mrs. Gonzales gave plaintiff Tylenol for his headache. In the following days, Mrs. Gonzales reported that plaintiff complained to her of continuing headaches, pain in his arms and neck, numbness in his hands, and difficulty sleeping. Further, Mrs. Gonzales testified that plaintiff developed difficulty thinking and that she did not trust him to drive their children in a vehicle.
The deposition of Dr. John Re‘aux was admitted into evidence. Dr. Re'aux testified when plaintiff first visited him, he related that he received a frontal head impact by a crane, but that he was wearing a “helmet.” Dr. Re'aux listed ten different areas in which he found plaintiff was suffering symptoms: upper back pain between shoulder blades just below neck; pain in right and left upper extremities; neck pain; nightly arm pain with numbness in hands; middle back pain; lower back pain; headaches; digestive | fldisorders with loss of appetite, nausea and diarrhea; insomnia; and depression. Dr. Re'aux also found plaintiff was suffering from extreme nervousness, mental dullness, eye strain, and blurred vision. However, Dr. Re'aux admitted that he did not perform any diagnostic tests and that plaintiffs prior brain CAT scan, performed before plaintiff saw Dr. Re'aux, was essentially negative, other than showing mild sinusitis. Nevertheless, Dr. Re'aux testified that he found “objective” symptoms, but was able to relate only plaintiffs subjective reports of pain in that regard. Dr. Re'aux found plaintiff was disabled from employment because of his pain, but that at the time of trial, plaintiff had improved to an “intermediate zone” such that if he showed further improvement, “soon he might be able to — to do something.” Dr. Re'aux felt plaintiff should be evaluated by a neuropsychologist regarding his mental functioning, and noted that he had suffered adult onset of asthma, which is indicative of stress, and that plaintiff was on anxiety/depression medications, BuSpar and Prozac.
After a thorough evaluation of the record presented to this court on review, we are unable to say the OWC judge committed manifest error in finding that plaintiff did not suffer an injury as a result of the March 21,1997 incident. Plaintiff bore the burden of proving that he was injured in an “actual, identifiable, precipitous event” that “directly produced] at the time objective findings of an injury.” None of plaintiffs co-workers testified that plaintiff reported having suffered an injury 1 ^immediately after the accident. Plaintiff initially expressed concern only over nearly being killed and at only having been asked by one co-worker if he had been injured. None of plaintiffs co-workers testified that plaintiff reported to them that he was struck in the head by the crane. In fact, the two witnesses who testified and who witnessed the incident related that plaintiff denied being injured immediately after the incident. Of plaintiffs co-workers, only Freddie Hebert testified that plaintiff complained to him of his arm and neck being stiff, in days subsequent to the incident.[6] Plaintiffs wife was the only witness who corroborated plaintiffs testimony that he experienced physical symptoms on the day of the accident.
*78 Although plaintiff claims he asked his supervisor to be sent to “first aid” on several occasions, the supervisor denied such requests had been made. The trial court obviously placed great emphasis on the fact that plaintiff did not seek medical attention on his own until April 7, 1997, after the termination of his employment and some seventeen days after the alleged accident.
In this case, there are two permissible views of the evidence; i.e., either plaintiff suffered an injury as a result of the crane incident or he did not. The OWC judge found plaintiffs report of being struck in the head by the crane “implausible” and “not credible,” stating, “Claimant has failed to establish by a preponderance of the evidence that he was injured in an actual, identifiable event which directly produced at the time objective findings of an injury.” (Emphasis added.) Further, even if this court found that the lower court erred in failing to find that the act of being jerked from the conveyor belt was an actual, identifiable event, we are unable to say the OWC committed manifest error in finding that the second prong of this inquiry; i.e., which “directly pro-duc[ed] at the time objective findings of an injury,” had been met. The factfinder’s choice between two permissible views of the evidence cannot be manifestly erroneous; therefore, the Indecision of the OWC should be affirmed. Consequently, we conclude that plaintiff/appellant’s second and third assignments of error are without merit.

Denial of Motion to Submit Additional Evidence

In his remaining assignment of error, plaintiff/appellant contends the OWC judge erred in failing to consider the medical report of Dr. William Drew Gouvier, prepared and submitted after the matter was taken under advisement. In support of his argument, plaintiff cites LSA-R.S. 23:1310.8, which provides, in pertinent part, as follows:
A. (1) The power and jurisdiction of the workers’ compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified, including the right to require physical examinations as provided for in R.S. 23:1123.... [Emphasis added.]
Because LSA-R.S. 23:1310.8 specifically governs continuing authority to modify former findings or orders, we do not believe it relevant to the instant case. When plaintiffs motion was filed in the OWC proceeding, the OWC judge had the case under advisement following the trial; no findings, orders, or judgments had as yet been rendered.[7]
Looking at the substance of plaintiffs motion presented to the OWC, it is clear that plaintiff was attempting to submit additional evidence to the trier of fact following the conclusion of the trial. The admission of evidence before the OWC is *79 governed by LSA-R.S. 23:1317, which provides, in pertinent part:
A. If an answer has been filed within the delays allowed by law or granted by the workers’ compensation judge, or if no | ^judgment has been entered as provided in R.S. 23:1316 at the time for hearing or any adjournment thereof, the workers’ compensation judge shall hear the evidence that may be presented by each party. Each party shall have the right to be present at any hearing or to appear through an attorney. The workers’ compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers’ compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.
It is evident from LSA-R.S. 23:1317 that the OWC judge is bound to hear the evidence of the parties that is offered during the hearing of the matter or during any continuance of that hearing. However, the jurisprudence reveals that the admissibility of evidence sought to be submitted subsequent to the conclusion of the hearing of the matter is subject to the discretion of the OWC judge. In the case of Brooks v. Leggett & Platt, Inc., 94-0617, p. 4 (La.App. 1 Cir. 11/9/95), 665 So.2d 432, 434, the claimant was allowed to take a doctor’s deposition subsequent to the trial of the matter, which was thereafter admitted into evidence by the OWC judge. The employer assigned the admission of this deposition as error on appeal, and this court found that there had been no abuse of discretion by the OWC judge since the doctor had been scheduled to testify at the trial but was called to the hospital because of a family illness. In so holding, this court cited LSA-R.S. 23:1317 and recognized that the statute gives an OWC judge “great discretion in deciding whether to receive or refuse offered testimony of witnesses.” We further stated in Brooks that, “If an unfair advantage to one party or unfair prejudice to another party would be created by a hearing officer’s decision to hold open a record, it is possible 11sthat an abuse of discretion would be found.” Brooks v. Leggett & Platt, Inc., 94-0617 at pp. 3-4, 665 So.2d at 434.
In the case currently before this court, the plaintiff knew prior to the OWC trial that the report of a neuropsychologist was recommended by his treating physician, Dr. Re'aux, who so stated in his deposition taken on August 26, 1997, nearly eight months prior to the trial before the OWC. Plaintiff had ample opportunity to obtain an evaluation by a neuropsychol-ogist during that time. Further, no attempt to introduce this additional evidence was made until July 7, 1999, more than a year after the trial had taken place. Had this report been allowed into evidence at such a late date, it clearly would have been unfair prejudice to the other party. Under these circumstances, we find no abuse of discretion in the failure of the OWC judge to refuse to consider this additional evidence.[8]
*80 CONCLUSION
For the reasons assigned herein, the judgment of the Office of Workers’ Compensation is affirmed. All costs of this proceeding are to be borne by plaintiffi'ap-pellant herein, Donald Gonzales.
AFFIRMED.

. The issue of plaintiff's termination from his employment is not before this court.

. By means of this motion, plaintiff sought to introduce the report of Dr. William Drew Gouvier, Ph.D., a neuropsychologist, on the issue of plaintiff’s injury.

. Although not directly addressed, the judgment of the OWC judge implicitly rejects plaintiff's request to submit the additional evidence contained in Dr. Gouvier’s report. When a judgment is silent as to a claim or demand, it is presumed that the trier of fact denied the relief sought. Caro v. Caro, 95-0173, p. 7 (La.App. 1 Cir. 10/6/95), 671 So.2d 516, 520; Prevost v. Jobbers Oil Transport Company, 95-0224, p. 7 n. 3 (La.App. 1 Cir. 10/6/95), 665 So.2d 400, 405 n. 3, writ denied, 96-0440 (La.4/8/96), 671 So.2d 336.

. Mr. Gonzales admitted that he was wearing a hard hat at the time of the incident.

. On cross-examination, Mr. Hebert admitted that he too had been fired shortly after plaintiff and that he was maintaining an action against the employer as well and was also represented by the same attorney as plaintiff.

. In LeBlanc v. Cajun Painting, Inc., 94-1609, p. 9 (La.App. 1 Cir. 4/7/95), 654 So.2d 800, 806, writs denied, 95-1655, 95-1706 (La.10/27/95), 661 So.2d 1349, 1350, this court explained that LSA-R.S. 23:1310.8 applies to the continuing jurisdiction of the OWC and "allows any party to apply for a modification when a change in conditions has occurred. This continuing jurisdiction appears similar to the continuing jurisdiction the trial court retains over child custody, child support, and alimony." This position is in accord with the views expressed herein. In order to seek modification, there must first be a former finding or order in place. No ruling had been made in the instant case at the time of plaintiff's motion.

. We note that, even if considered, this report does not have significant evidentiary value bearing on the decisive issue for the trier of fact; i.e. whether plaintiff suffered an injury that produced objective findings at the time of the March 21, 1997 incident. Dr. Gouvier related in his report that plaintiff had suffered a head injury at the age of sixteen as a result *80 of a car accident, after which he had been unconscious for two days. Although Dr. Gou-vier found at the time of his examination that plaintiff suffered from diminished left-hemisphere functioning, Dr. Gouvier indicated, "It cannot be stated with absolute certainty that the most recent accident resulted in [plaintiff’s] current left-hemisphere deficits.” Nevertheless, Dr. Gouvier went on to state that there was a high degree of probability the deficits were related to the current incident, based on plaintiff’s reports of symptoms following the incident that were not present prior to the incident. The trier of fact’s finding of a lack of credibility on the part of plaintiff would obviously influence his conclusion as to the value of Dr. Gouvier's report, since the doctor’s opinion hinges to a great degree on the historical account of the plaintiff. Thus, we do not believe the admission of this additional evidence would have changed the outcome of the OWC judge's factual findings.