| .GUIDRY, J.
In this workers’ compensation case, Tetra Technologies, Inc. and Travelers Property Casualty Corporation (collectively “Tetra”) appeal the Office of Workers’ Compensation (OWC) judgment finding that Ronald J. Boquet Sr. is entitled to permanent total disability benefits. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
Ronald J. Boquet Sr. worked for Tetra Technologies, Inc., and was injured in a work-related accident on April 2, 1990. Thereafter, Tetra Technologies, Inc. paid Mr. Boquet weekly disability benefits at the rate of $276.00 for temporary total disability through November 11, 1994. Beginning on December 14, 1994, Tetra Technologies, Inc. paid Mr. Boquet monthly disability benefits at the rate of $835.75 for permanent partial disability.[1] Tetra Technologies, Inc. terminated its payment of disability benefits on April 28, 2000, when Mr. Boquet had received the maximum five hundred twenty weeks of benefits.
On May 23, 2000, Mr. Boquet filed a disputed claim for compensation with the OWC. Thereafter, on March 16, 2001, vocational rehabilitation was initiated. A trial before the OWC was held on January 7, 2002. In a judgment signed on February 4, 2002, the workers’ compensation judge rendered judgment in favor of Mr. Boquet and ordered that he was entitled to permanent total disability benefits.
ASSIGNMENTS OF ERROR
Tetra now appeals from this judgment and asserts the following assignments of error:
1. The workers’ compensation judge erred in applying the “Totality of Factors” standard to determine permanent total disability status.
|a2. The workers’ compensation judge erred in his determination that Mr. Bo-quet was not provided vocational rehabilitation as provided for in the Workers’ Compensation Act.
3. The workers’ compensation judge erred in awarding court costs.
Additionally, Ronald J. Boquet Sr. answered the appeal, seeking attorney’s fees from Tetra, alleging Tetra’s appeal has no basis in fact or in law.
*3 DISCUSSION
Permanent Total Disability Standard
Because Mr. Boquet is not employed, the controlling statutory provision is La. R.S. 23:1221(2)(c) which provides:
For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while in any pain, notwithstanding the location or availability of any such employment or self-employment. [Emphasis added.]
The Louisiana Supreme Court, in interpreting the above statutory provision, has recently recognized that the clear and convincing standard in the workers’ compensation context is an intermediate standard, falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. Comeaux v. City of Crowley, 01-0032, pp. 8-9 (La.7/3/01), 793 So.2d 1215, 1220. As such, to prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. McCray v. Delta Industries, Inc. 00-1694, p. 3 (La.App. 1st Cir.9/28/01), 809 So.2d 265, 268.
l4In the instant case, in his reasons for judgment, the workers’ compensation judge stated that he relied on the totality of factors standard in finding Mr. Boquet permanently totally disabled. Thus, the workers’ compensation judge committed legal error by applying an incorrect legal standard, and our review will be de novo. Taylor v. BASF Wyandotte, 01-0328, pp. 4-5 (La.App. 1st Cir.9/28/01), 805 So.2d 235, 238, writ denied, 01-2835 (La.1/4/02), 805 So.2d 206.
Analysis

Permanent Total Disability Status

This court has previously stated, in regard to determining whether a claimant has met his burden of proving disability by clear and convincing evidence, that the claimant must introduce objective medical evidence of the disabling injury. McCray, 00-1694 at 4, 809 So.2d at 269. Disability can be proven by medical and lay testimony. The trial court must weigh all the evidence, medical and lay, in order to determine if the plaintiff has met his burden. McCray, 00-1694 at 3, 809 So.2d at 269.
In the instant case, Mr. Bouquet introduced the deposition testimony and medical records of his treating physicians in support of his claim for permanent total disability benefits. At the time of trial, Mr. Boquet was still under the care of Dr. Craig Walker, a cardiologist, for venuous thrombosis and pulmonary emboli; Dr. David Weir, a neurologist, for seizures; and Dr. Don Carlos, a psychiatrist, for depression. Additionally, Mr. Boquet was treated by Dr. Conrad Speece, an osteopathic physician, for balance problems. All of the doctors’ deposition testimony and medical records indicate that plaintiff’s medical conditions are related to the 1990 work injury.
Through medical records and deposition testimony, each doctor detailed the status of Mr. Boquet’s related medical conditions. *4 First, Dr. Weir stated that the last time he saw Mr. Boquet was in January of 2001 and since that time, when Mr. |5Boquet’s medication dosage was raised, he had no knowledge of Mr. Boquet having any more seizures. Further, Dr. Walker, who at the time of his deposition last saw Mr. Boquet in September of 2001, noted that Mr. Bo-quet had not had any further pulmonary emboli, though he was at a greater risk for the rest of his life for that condition and deep venuous thrombosis. Finally, Dr. Carlos also stated that Mr. Boquet’s depression was in remission, though he still needed to take medication.
Ultimately, each of Mr. Boquet’s treating physicians opined that Mr. Boquet is capable of performing sedentary work, with certain restrictions,[2] if appropriately trained. However, Mr. Boquet argues, that Dr. Weir, despite his deposition testimony that from a neurological standpoint Mr. Boquet is capable of performing sedentary employment, did not approve Mr. Boquet to perform any of the job descriptions submitted by the vocational rehabilitation counselor, Katherine Harrison. The record indicates, in a follow up letter to Katherine Harrison, dated January 3, 2001, Dr. Weir stated: “The jobs described in the job description sent to me in September may well be within Mr. Boquet’s physical abilities, but, due to the nature of his injury, I do not believe emotionally or mentally he is capable of sustaining such employment.”
In contravention to this statement, Dr. Carlos, the psychiatrist treating Mr. Bo-quet for depression, approved each of those same job positions, from a psychiatric standpoint. Because we find that Dr. Carlos was in a better position to determine Mr. Boquet’s emotional capabilities, we accord little weight to Dr. Weir’s determination. Such an opinion is outside Dr. Weir’s area of expertise in neurology and not supported by facts contained in the record.[3] See Glass v. (Magnolia School, Inc., 01-1209, p. 18 (La.App. 5 Cir. 3/13/02), 815 So.2d 143, 153, writ denied, 02-1048 (La.6/7/02), 818 So.2d 776.
In addition to the above-mentioned doctors, Mr. Boquet also saw Dr. Kevin J. Bianchini, a clinical psychologist/neuro-psychologist, who evaluated Mr. Boquet and performed various tests to determine his cognitive abilities. Dr. Bianchini diagnosed Mr. Boquet with a cognitive disorder secondary to brain damage. However, Dr. Bianchini found that from the tests he performed, Mr. Boquet was functioning at a level that would allow him to perform sedentary, gainful employment, aside from high cognitive demands or cognition that affected safety. Therefore, Dr. Bianchini opined that Mr. Boquet was capable of gainful employment from a neuro-psycho-logical and psychological standpoint, and recommended neurological rehabilitation to help Mr. Boquet recognize his strengths and weaknesses, develop compensation strategies, and work on function issues. Dr. Bianchini further stated that, while not the best way to handle the situation, Mr. Boquet was capable of some form of employment, even without the recommended neurological rehabilitation.
While we recognize that Mr. Boquet has some serious medical conditions, which enable him to receive social security and require him to walk with a cane and take twelve medications daily, we find that all of *5 his physicians have determined that from both a physical and psychological/psychiatric standpoint, Mr. Boquet is capable of performing sedentary work, with some restrictions, if appropriately trained.
Additionally, Katherine Harrison, the vocational rehabilitation counselor hired by Tetra to provide vocational services to Mr. Boquet, determined after meeting with Mr. Boquet, obtaining employment, education and medical information, reviewing records and depositions of Mr. Boquet’s physicians, administering vocational testing, and conducting labor market surveys, that Mr. 17Boquet was capable of sedentary employment that provided on-the-job training. Ms. Harrison conducted several labor market surveys and forwarded her findings to Mr. Boquet, along with job descriptions and a request that he apply for those positions. After Mr. Boquet applied for these positions, Ms. Harrison followed up with the potential employers and forwarded some of the job descriptions to Dr. Weir and Dr. Carlos for their approval. As stated previously, Dr. Carlos indicated that Mr. Boquet was capable of performing those positions from a psychiatric standpoint and Dr. Weir indicated that Mr. Boquet may well be physically capable of performing those jobs.
Mr. Boquet attempts to refute Ms. Harrison’s findings by relying on the testimony of Allen Crane, a rehabilitation counsel- or called by Mr. Boquet at trial. Mr. Crane testified that Mr. Boquet has some substantial vocational barriers to employment, and without some rehabilitation as recommended by Dr. Bianehini and substantial vocational services, those vocational barriers would make it unlikely that he could secure employment. However, this opinion does not express that Mr. Boquet is physically unable to engage in any employment, but rather goes to the amount of rehabilitation that he believes is necessary to enable Mr. Boquet to secure employment. Therefore, based on the facts and law as outlined above, we do not find that Mr. Boquet proved by clear and convincing evidence that he is physically unable to engage in any employment and therefore is not entitled to permanent total disability benefits.
Further, based on our decision as outlined above, we find Mr. Boquet’s claim for attorney’s fees to be without merit.

Rehabilitation

On appeal, both parties discuss the issue of whether Mr. Boquet was provided with vocational rehabilitation as provided for in the Workers’ Compensation Act. However, the evidence in the record is insufficient to decide 1 «this issue. Therefore, a remand is required for further development of the record on this limited issue.

Costs

Additionally, we do not address Tetra’s assignment of error regarding court costs, as that issue was the subject of a separate judgment, signed on March 15, 2002. Said judgment was appealed from separately, and is not currently before this court.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the OWC and remand this matter for further proceedings regarding the issue of rehabilitation. The costs of this appeal are to be borne equally-by the appellee, Ronald J. Boquet Sr., and appellants, Tetra Technologies, Inc. and Travelers Property Casualty Corporation.
REVERSED AND REMANDED WITH INSTRUCTIONS.
FITZSIMMONS, J., concurs and assigns reasons.
PETTIGREW, J., dissents and assigns reasons.

. According to the payment history submitted by Tetra Technologies, Inc., these payments are coded as permanent partial disability. However, in its answer to Mr. Boquet's disputed claim, Tetra refers to the benefits as supplemental earnings benefits.

. Some of the restrictions include avoiding heights, heavy machinery, driving, prolonged standing, and bleeding and dehydration risks.

. The record does not contain any information as to Dr. Weir’s credentials. At his deposition, he was accepted as an expert in neurology, and no curriculum vitae was presented.