# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 03-1425


**JACK COLEMAN**

**VERSUS**

**ASCENSION ENTERPRISE, INC.**


********

APPEAL FROM THE
OFFICE OF WORKERS COMPENSATION
DISTRICT 2, PARISH OF RAPIDES, NO. 02-7904
HONORABLE JAMES L. BRADDOCK, PRESIDING
********


## SYLVIA R. COOKS
## JUDGE


********


Court composed of Sylvia R. Cooks, Marc T. Amy and Elizabeth A. Pickett, Judges.


**AFFIRMED.**

**John Michael Morrow, Jr.**
**613 South Main Street**
**P.O. Drawer 219**
**Opelousas, LA 70571-0219**
**(337) 942-6529**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Jack Coleman**


**L. Lyle Parker**
**Jill M. Kelone**
**Bolen, Parker & Brenner**
**P.O. Box 11590**
**Alexandria, LA 71315-1590**
**(318) 445-8236**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Ascension Enterprises, Inc.**

**COOKS, Judge.**

On May 13, 2002, Jack Coleman was struck by a golf cart while in the course and scope of his employment with Ascension Enterprises, Inc. Mr. Coleman was first seen by Dr. Stephen Holmes at Ascension Medical Clinic and diagnosed with a left thigh flexor abductor strain and a left groin strain. He was advised he could return to work as his pain allowed.

On June 10, 2002, Coleman went to Opelousas General Hospital complaining of neck and low back pain. Coleman then began treatment with Dr. Rick Ortego, a chiropractor. The employer then referred Coleman to Dr. Gregory Gidman for an examination, which took place on September 11, 2002. Dr. Gidman found no objective findings of any injury, but did note subjective findings of tenderness and pain. He diagnosed a strain of the lumbar right lower extremities of the neck and upper extremities. He recommended that Coleman return to work performing sedentary/light office duty work with no repetitive head motion. Dr. Gidman also scheduled a bone scan and MRIs of the lumbar and cervical spine, which he found were unremarkable. Dr. Gidman felt Coleman required a functional capacity evaluation (FCE).

Based on the medical report from Dr. Gidman, the employer sent a letter to Coleman, advising him they located available clerical work of a sedentary nature. Coleman did not act on the notice, stating he was concerned about going back to work because Dr. Gidman mentioned to him he might have suffered a neck fracture. Coleman then began treatment with Dr. Michael Heard, an orthopedist, in October of 2002.

Dr. Heard, who became Coleman's treating physician, placed him on a no-work status based upon his complaints of pain and the examination findings. Much like Dr.

Gidman, Dr. Heard diagnosed strained cervical and lumbar areas. Dr. Heard recommended physical therapy and requested performance of a lumbar myelogram, a post-myelogram CT and a bone scan. The employer corresponded with Dr. Gidman regarding the appropriateness of the proposed testing. Dr. Gidman felt a bone scan was unnecessary because a previous scan was normal. Dr. Gidman did not approve or disapprove of the myelograms, but stated he thought there was little possibility of positive findings.

Dr. Heard also recommended an EMG and nerve conduction velocity studies of the strained areas. The EMG and nerve conduction velocity studies were approved and performed. The findings were normal. Eventually, the myelograms were performed on June 3, 2003. Dr. Heard stated they indicated mild degenerative changes in both the cervical and lumbar spine, with no evidence of disc herniation, protrusion or impingement. Dr. Heard felt Coleman had post-traumatic subjective neck and low back pain with radiculitis following the May 13, 2002 work injury. He further concluded as follows:

> With a diagnostic workup showing the current results, I do not see an operative problem in this particular individual. Efforts should be made to try to relieve his pain with pain management. I would think that he would probably be able to return to work in some capacity in the near future, although it might be limited. At the present time, he remains unable to do his job.

Coleman filed his claim for worker's compensation benefits following the employer's termination of benefits on September 23, 2002, based on Dr. Gidman's recommendation that Coleman return to some form of sedentary employment. The parties stipulated that Coleman was injured in a work related accident on May 13, 2002, that his average weekly was $341.00, and that Coleman was timely paid indemnity benefits through September 23, 2002. After a trial before the Office of

Workers' Compensation, the workers' compensation judge concluded as follows:

It appears from the evidence presented from Dr. Gidman and Dr. Heard that both doctors have concluded that Mr. Coleman has a soft tissue injury. Indeed, the diagnostic tests confirmed there's no nerve root compression or irritation, nor any disc herniations or protrusions. Dr. Gidman expressed in his deposition that if these tests turned out normal, that an FCE was needed – was needed for Mr. Coleman and vocational rehabilitation to return to work in a gradual fashion. Dr. Gidman stated, in his deposition, that he did not release Mr. Coleman to return to work in any capacity because he was not the treating physician, only that he encouraged Mr. Coleman to return to some type of work.

Apparently, the employer defends the case on the basis of the normal diagnostic testing, contending that this fails to show any objective evidence of injury and that a job was offered, based on a release to return to work to sedentary duty.

The case of [*Gray v. Courtney Equipment Co., Inc.*, 96-908 (La.App. 3 Cir. 2/5/97), 689 So.2d 607] was a similar case in which the employer denied benefits because there was no objective evidence of an injury on the diagnostic tests, even though one – one physician continued to disable [Mr. Gray] based on his examinations and his findings on those examinations and feeling like [Mr. Gray] had nerve root irritation.

Dr. Gidman concurs that the diagnostic tests were done because – were – could be done in Mr. Coleman's case because he had radiculitis and he wanted to see if he had any disc herniations, that he felt that, if the tests were done, they would be normal, which – which corresponds with Dr. Heard, in his deposition, said you want to do these tests to make sure you can find a source of the pain complaints for Mr. Coleman. And he also said that, in his opinion, he thought the tests were not a surgical problem.

Nevertheless, both doctors agreed that he had a lumbar strain. Both doctors agreed that he's limited in what he can do. Well, Dr. Gidman says he's limited in what he can do. And Dr. Heard says he's unable to do anything. They both agree he needs an FCE. Dr. Heard says he needs work hardening and work conditioning.

Mr. Schutte testified, on behalf of the employer, that he offered Mr. Coleman a sedentary job, assisting the safety man arranging files, and that on December 31st of 2002 Ascension Enterprises went out of business and that there was no job thereafter available for Mr. Coleman.

It is this Court's finding that based upon the medical evidence and the case of Gray versus Courtney – I just set that case down – that Mr. Coleman has shown, by a preponderance of the evidence, that he has had an injury, which is a lumbar strain, that he's still temporarily totally disabled based on the opinion of Dr. Heard, which corresponds with that of Dr. Gidman, that has this type of injury, and the fact that he has not had an FCE performed, nor has he had work hardening or work

conditioning performed. The job offered by the employer is – is an improper offer of a job, as Dr. Gidman testified that he never released Mr. Coleman to any type of work, only that he encouraged him to do sedentary work.

The Court finds that the termination of benefits to Mr. Coleman was arbitrary and capricious. Now, there's no penalties awarded for a termination of benefits which is arbitrary and capricious. However, I do award a Four Thousand Dollar ($4,000.00) attorney fee to Mr. Morrow for his collection of these benefits for Mr. Coleman. Mr. Coleman is to be placed back on benefits at temporary total disability benefits at his appropriate rate [retroactive to the date of termination], which is to continue until such time as he is unable to return to some type of work, whether it's limited work or a full-duty release. And I think, gentlemen, that that would conclude this matter.

Ascension Enterprises appeals the judgment, contending the WCJ erred in finding Coleman was temporarily and totally disabled and that the job offer made by the employer was improper. For the following reasons, we affirm.

## ANALYSIS

A workers' compensation judge's decision that a claimant has met his burden of proof is a factual determination. As such, this determination will not be overturned on review absent manifest error. An appellate court will set aside a factual finding by a hearing officer only if the record reveals there was no reasonable basis for the finding and that the finding was clearly wrong. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La.1/14/94), 630 So.2d 706; *Stobart v. State Through DOTD*, 617 So.2d 880 (La.1993). In order to reverse factual findings of a workers' compensation judge, an appellate court must determine that a reasonable factual basis does not exist in the record to support the finding and that the record establishes the finding is clearly wrong or manifestly erroneous. *Clay v. City of Jeanerette*, 99-1421 (La.App. 3 Cir. 5/31/00), 768 So.2d 609, *writ denied*, 00-2006 (La. 10/27/00), 772 So.2d 124.

The employer contends there was no objective evidence of an injury. However, Dr. Heard, the treating physician, stated in his opinion Coleman was unable to work

-4-

and required work hardening and work conditioning. Dr. Heard also testified that Coleman "has an incompletely diagnosed post traumatic problem in his neck and low back area with severe pain and radiculitis. This needs to be . . . we need to find out what is the most probable cause, so we can determine what need to be done ultimately in this particular man."

The employer relies only on the report of Dr. Gidman, who examined Coleman on one occasion, at its request. It also contends that Dr. Gidman released claimant to return to light duty work. However, Dr. Gidman did not release Coleman to return to work, but merely *encouraged* him to return to light duty employment as soon as possible. Dr. Gidman specifically stated he did not release Coleman to return to work, because he felt only the treating physician can make that recommendation.

Both Dr. Heard and Dr. Gidman concluded Coleman had a lumbar and cervical strain. The doctors agreed Coleman required a FCE, and his work capacity was limited. Dr. Heard, the treating physician, felt Coleman was unable to do anything without work hardening and conditioning. Our review of the record convinces us sufficient *objective medical evidence* was presented by Coleman to meet the burden of proving his disability. *See Gray v. Courtney Equipment Co., Inc.*, 96-908 (La.App. 3 Cir. 2/5/97), 689 So.2d 607. While the testimony of Dr. Gidman does, arguably, present conflicting medical evidence, the WCJ is in the best position to weigh the testimony and medical evidence. After reviewing the record, we cannot say the determination that Coleman was temporarily and totally disabled was manifestly erroneous.

Further, the WCJ did not err in finding the job notice provided by the employer was premature, considering that Coleman was not released by any physician to return

to work. An "encouragement" by Dr. Gidman was not a medical release.

Coleman seeks payment of additional attorney fees to compensate his counsel for work done on the present appeal. However, he did not file an answer requesting such relief. Failure to file an answer pursuant to La.Code Civ.P. art. 2133 precludes this court from awarding additional attorney fees.

## DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed against appellant, Ascension Enterprises.

**AFFIRMED.**

NUMBER 03-1425

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JACK COLEMAN

VERSUS

ASCENSION ENTERPRISE, INC.

AMY, J., dissenting.

I respectfully disagree that an affirmation is warranted. Louisiana Revised Statutes 23:1201(1) defines an "accident" in the context of workers' compensation as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time *objective findings* of an injury [.]" (Emphasis added.) It is well settled that in order for a claimant to recover temporary total disability benefits, such as those sought by Mr. Coleman herein, "the claimant is required to introduce *objective medical evidence* supporting the existence of [his disability]." (Emphasis added.) *Clark v. Town of Basile*, 01-1203, p. 8 (La.App. 3 Cir. 3/27/02), 812 So.2d 879, 884. *See also*, *Ratliff v. Brice Bldg. Co.*, 03-624 (La.App. 5 Cir. 11/12/03), 861 So.2d 613; *Daniel v. New Orleans Public Service Inc.*, 02-2427 (La.App. 4 Cir. 12/3/03), 861 So.2d 721; *Boquet v. Tetra Technologies, Inc.*, 02-937 (La.App. 1 Cir. 2/14/03), 847 So.2d 1. In my opinion, the sole evidence presented as to Mr. Coleman's injury was of a *subjective* character; as such, it does not meet the requisite standard for recovery of temporary total disability benefits. Accordingly, I would reverse the trial court's determination that Mr. Coleman is temporarily totally disabled.

I respectfully dissent.