768 So.2d 609 (2000)
Anderson CLAY, Sr.
v.
CITY OF JEANERETTE.
No. 99-1421.
Court of Appeal of Louisiana, Third Circuit.
May 31, 2000.
Writ Denied October 27, 2000.
*610 Victor J. Versaggi, Lafayette, LA, Counsel for Plaintiff/Appellant, Anderson Clay, Sr.
Christopher R. Philipp, Jamison & Philipp, Lafayette, LA, Counsel for Defendant/Appellee, City of Jeanerette.
(Court composed of Judge ULYSSES GENE THIBODEAUX, Judge JOHN D. SAUNDERS and Judge MARC T. AMY).
THIBODEAUX, Judge.
In this workers' compensation claim, Anderson Clay, Sr., appeals a judgment in favor of the City of Jeanerette terminating his workers' compensation benefits. The workers' compensation judge found that Mr. Clay was not entitled to any further supplemental earnings benefits (SEB); that he had received 104 weeks of SEB, was receiving Old Age Social Security benefits, and therefore, he was no longer entitled to SEB; Mr. Clay's claim that he was still temporarily totally disabled (TTD) because substantial pain would prevent him from returning to work was without merit; Mr. Clay failed to prove he was permanently and totally disabled (PTD), and he was not in a recovery period, therefore PTD was inapplicable; and Mr. Clay was not entitled to any further workers' compensation disability benefits.
For the following reasons, we reverse in part and affirm in part.

I.

ISSUES
We shall consider:
1. whether the workers' compensation judge erred in failing to find Anderson Clay, Sr. was neither temporarily totally disabled nor permanently totally disabled; and
2. whether the workers' compensation judge erred in finding that Clay was no longer entitled to supplemental earnings benefits.

II.

FACTS
On March 3, 1986, fifty year old Anderson Clay, Sr. injured his neck and left shoulder and re-injured his cervical *611 spine while in the course and scope of his employment as a mechanic at the city motor pool for the City of Jeanerette, Louisiana, which is approximately thirty-five to forty miles from Lafayette. According to Mr. Clay, who is an uneducated, functional illiterate, he was working under a truck when the transmission fell off its jack and, in an effort to prevent it from hitting the floor, he was forced to hold on to it without any assistance. Following his injury, Mr. Clay filed a claim for compensation. Mr. Clay was receiving $1,067.72 per month in compensation benefits. He has not worked since the accident. Both parties stipulated that Mr. Clay injured himself on March 21, 1985 and subsequently injured himself again on March 3, 1986. The parties also stipulated that when Mr. Clay became disabled, his average weekly wage was $372.80, which entitled him to compensation benefits at the rate of $248.59 per week. The City of Jeanerette paid temporary total disability (TTD) benefits to Mr. Clay from March 3, 1986 until April 5, 1994, at which time his benefits were modified to supplemental earnings benefits (SEB).
As a result of his neck and shoulder injuries, Mr. Clay underwent two surgeries, including a surgical fusion performed by Dr. Luiz deAraujo. In a letter to counsel for Mr. Clay dated December 6, 1988, Dr. deAraujo summarized this clinical case by stating in part:
The patient has had improvement of both his low back pain, incidentally studies failed to reveal any significant pathology, and also the neck pain, but a certain degree of neck and left shoulder pain has persisted. In January 1988 an MRI scan of the cervical spine was done and failed to show any significant pathology.
Dr. deAraujo referred Mr. Clay to Dr. Hodges for physical therapy. As Dr. deAraujo believed, Mr. Clay had reached "a plateau in his recovery from a neurosurgical standpoint," he discharged him from his care on February 1, 1988. Dr. deAraujo opined that Mr. Clay had permanent impairment from the injuries, which partially resolved following surgery. However, the doctor added that Mr. Clay had been left with enough residual to prevent him from being involved in physical labor. Dr. deAraujo believed Mr. Clay was capable of being involved in sedentary occupations with certain physical restrictions.
Mr. Clay was referred to Dr. John Grimes for vocational evaluation. In a follow up to Dr. Daniel Hodges' referral, Dr. Grimes, in a letter dated January 27, 1988, stated that Mr. Clay's psychomotor and dexterity skills had depreciated, a probable result of his medical condition. Considering Mr. Clay's age, lack of education, previous work history, and present medical condition, Dr. Grimes concluded that Mr. Clay is, "at best, a marginal candidate for any type of vocational rehabilitation efforts." Dr. Grimes summarized by expressing that the best thing for Mr. Clay to do would be to apply for Social Security benefits. Dr. Grimes steadfastly asserted that Mr. Clay was unlikely "to return to any competitive employment" unless he could get some accommodated work through his previous employer."
In 1990, Dr. James LaFleur ordered an MRI of Mr. Clay's continued suffering from neck pain. The MRI revealed further progression of the lesion at the C3-4 level. Dr. LaFleur referred Mr. Clay back to Dr. deAraujo. Dr. deAraujo recommended that Mr. Clay undergo a cervical myelogram and an anterior cervical discectomy and fusion at C3-4.
The City of Jeanerette then required Mr. Clay to submit to independent medical examinations by Dr. Thomas Flynn and Dr. Jack Hurst. In his evaluation dated October 2, 1991 to Risk Management, Inc., Dr. Flynn conveyed his belief that Mr. Clay was exaggerating and magnifying his symptoms during examination. Dr. Flynn attributed Mr. Clay's cervical and lumbar spondylosis to the normal aging process. He reported that he was unable to find *612 objective evidence of a significant problem and he concluded that Mr. Clay did not need additional diagnostic testing or surgical intervention. Dr. Flynn recommended that Mr. Clay be placed in a work-hardening program and returned to his former employer because he did not believe an assignable disability existed.
Dr. Hurst, in his December 4, 1991 letter to counsel for Mr. Clay, revealed that he found no evidence which would indicate that a neurological problem existed which would account for the pain Mr. Clay described. Based on old radiographs of Mr. Clay's cervical spine, Dr. Hurst was unable to detect "any specific surgical lesion." He bluntly concluded, "[I]t would seem to me he has reached maximum medical benefit as evidenced on this neurological examination. I am not certain why he was attempting to influence the examination with inconsistencies in muscle and sensory testing but he certainly does not demonstrate a neurological problem."
The City of Jeanerette referred Mr. Clay to Miller & Associates Rehabilitative Services in Baton Rouge, Louisiana. R. Wayne Miller evaluated Mr. Clay, and on May 10, 1991, he reported that Mr. Clay would have to be evaluated by Dr. deAraujo, his treating physician, to determine whether he had reached his maximum medical improvement. Miller also stated that Mr. Clay appeared to be qualified for various types of jobs in many industries, but several of those industries would not be located in his geographic area, and therefore, actual job availability would be severely limited. Miller reasoned that because of Mr. Clay's age, educational history, limitation of transferability of skills to alternative occupations, Mr. Clay "would be a marginal candidate, at best, for successful vocational rehabilitation."
Mr. Clay was subsequently referred to the rehabilitation firm of Glenn-Mar. Mark Cheairs interviewed him, and in a report dated February 12, 1992, finalized the best vocational prognosis at that time was to have Mr. Clay participate in a modified return to work program with his pre-injury employer. If this was not possible, then the chances of returning Mr. Clay to gainful employment within his geographic location would be difficult. Cheairs also suggested that before vocational rehabilitation was entered into, Mr. Clay's counsel and the workers' compensation carrier discuss types of offsets which would benefit Mr. Clay.
On April 5, 1994, Mr. Clay's benefits were modified to SEB. On November 23, 1998, the City of Jeanerette filed a claim to terminate his SEB based on La.R.S. 23:1221(3)(d)(iii). The City alternatively argued it was entitled to coordinate Mr. Clay's SEB with his Social Security disability benefits in accordance with La.R.S. 23:1225(C)(1)(b). In December 1998, Mr. Clay began receiving Old Age Insurance Benefits in the amount of $563.50 per month. On January 12, 1999, Mr. Clay filed a claim [No. 99-00225] contending he was still TTD and/or PTD. On May 24, the consolidated claims were heard before an Office of Workers' Compensation (OWC) judge. On June 22, 1999, the OWC judge held Mr. Clay was not entitled to any further disability benefits.
Mr. Clay appeals the OWC judgment.

III.

LAW AND DISCUSSION

Standard of Review
A hearing officer's decision that a claimant has met his burden of proof constitutes a factual determination. As such, this determination will not be overturned on review absent manifest error. An appellate court will set aside a factual finding by a hearing officer only if the record reveals there was no reasonable basis for the finding and that the finding was clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). In order to reverse a factual finding of a workers' compensation judge, the appellate court must determine that a reasonable factual basis does not exist in the record to *613 support the finding of the workers' compensation judge and that the record establishes the finding is clearly wrong or manifestly erroneous. Sept v. City of Baker, 98-1190, p. 5-6 (La.App. 1 Cir. 5/18/99); 733 So.2d 748, 750-751. We yield great deference to this standard of review because "only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).

Temporary Total Disability & Permanent Total Disability
Mr. Clay argues the OWC judge erred in finding that he was not temporarily totally disabled. Workers' compensation benefits are available for an employee who suffers an injury that produces a temporary total disability to engage in any self-employment or occupation for wages. Bank of Winnfield and Trust Co. v. Collins, 31,473, p. 3 (La.App. 2 Cir. 2/24/99); 736 So.2d 263, 266. La.R.S. 23:1221(1)(c) provides that an employee who seeks temporary total disability benefits must prove by clear and convincing evidence, without a presumption of disability, that he is physically incapable of engaging in any employment, ... regardless of the nature... of the employment ..., including but not limited to ... employment while working in pain, notwithstanding the location or availability of any such employment or self-employment.
We have held that the existence of pain is not a pertinent factor in the issue of temporary total disability benefits. Harris v. Langston Co., Inc., 94-1266 (La.App. 3 Cir. 4/5/95); 653 So.2d 789. We maintain this holding in this case.
Mr. Clay's restrictions are results of his pain. Dr. deAraujo's observations in the December 6, 1988 letter stated that no significant pathologies were revealed from studies, but there was a persistence of neck and left shoulder pain. There was also no significant pathology found when an MRI scan of Mr. Clay's cervical spine was done. Dr. deAraujo, as we previously stated, also concluded that Mr. Clay was capable of sedentary work with some physical restrictions.
Moreover, Dr. Flynn failed to find any disability and could not discern any significant objective problem.
While we observe that the medical records suggest a plausible and intellectually defensible argument in favor of finding either temporary total disability or permanent total disability, we conclude that, because of the conflicting medical evidence, the workers' compensation judge was not clearly wrong in finding that Mr. Clay had not proven by clear and convincing evidence that he was temporarily totally disabled and/or permanently totally disabled.

SEB Termination
The workers' compensation judge determined that since Mr. Clay had received 104 weeks of SEB, his entitlement to that benefit was exhausted under La. R.S. 23:1221(3)(d)(iii). While that determination was correct at the time of the judge's decision, it is now no longer the law. Pierce v. Lafourche Parish Council, 99-2854, pp. 8-9 (La.5/16/00); 762 So.2d 608, 614, recently concluded that:
The statute's application results in disparate treatment of employees over age 62 from employees under age 62 and thus constitutionally discriminates against those persons on the basis of age.
In sum, we conclude that the part of La.R.S. 23:1221(3)(d)(iii) which provides that supplemental earnings benefits shall terminate `when an employee begins to receive old age insurance benefits under Title II of the Social Security Act' after having received not less than one hundred four weeks of supplemental earnings benefits unconstitutionally denies plaintiff equal protection of the laws under article I, § 3 of the Louisiana Constitution.
*614 Thus, Mr. Clay's SEB under La.R.S. 23:1221(3)(d) extends to 520 weeks.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation judge is reversed in part and affirmed in part.
Costs of this appeal are assessed to the City of Jeanerette.
REVERSED IN PART; AFFIRMED IN PART AND RENDERED.