STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-806


MIA FIGGINS

VERSUS

WAL-MART


**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 05-00485
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE
**********


JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Jimmie C. Peters, Judges.


**REVERSED AND RENDERED.**

W. Jay Luneau
Thomas D. Davenport
Luneau Law Office
1239 Jackson St.
Alexandria, LA 71301
(318) 767-1161
Counsel for Plaintiff/Appellant:
Mia Figgins

Charles Martin Kreamer
Patrick A. Johnson
Allen & Gooch
1015 St. John Street
Lafayette, LA 70502-3768
(337) 291-1000
Counsel for Defendant/Appellee:
Wal-Mart

**SAUNDERS, Judge.**

Appellant, Mia Figgins, was injured in a work related accident in July 1996. Appellant received treatment from two separate doctors, which was approved and paid for by her employer, Appellee, Wal-Mart Stores, Inc., after the occurrence of the accident; however, she continued to experience pain as a result of her injury. Appellant then sought treatment with a third physician; however, Appellee refused to authorize said treatment, claiming it was not necessary. Appellant subsequently filed a Disputed Claim for Compensation. After a trial on the merits, the trial court ruled that Appellant was not entitled to the treatment, as she was seeking "future medical care." The trial court further held that Appellant did not prove by a preponderance of the evidence that further medical treatment was reasonable and necessary, and therefore, Appellant's claim was dismissed with prejudice. Appellant now appeals the judgment in favor of Appellee, Wal-Mart Stores, Inc. We reverse and render judgment in favor of Appellant.

**FACTS AND PROCEDURAL HISTORY**

Appellant, Mia Figgins, an employee of the Natchitoches Wal-Mart Store, suffered a work-related injury on July 30, 1996, when boxed stereo equipment fell from a shelf and struck her on the head. Appellant was initially examined at the Natchitoches Parish Hospital Emergency Room, where the examining physician, Dr. Knecht, noted that she suffered a contusion, for which she was prescribed Extra Strength Tylenol, was given an ice pack, and was told to return if necessary.

Appellant continued to suffer with sharp pains in her scalp, and on September 18, 1996, she began treatment with neurologist, Dr. Riad Hajmurad. She remained under the care of Dr. Hajmurad for approximately five years, during which time, she complained of intermittent neuralgic pain and tenderness in her right

parietal area, just behind her hairline. She was told that her condition was non-surgical, and was prescribed medication to manage the pain. When the prescription medications ran out, Appellant relied solely on over-the-counter medications. Dr. Hajmurad also conducted two MRIs as well as an EEG, and cranial and cervical x-rays, all of which came back normal. On February 25, 2002, Dr. Hajmurad issued a report stating that Appellant was at maximum medical improvement (MMI), and that with her condition, she could expect to receive treatment approximately every six months.

Appellee obtained a second medical opinion from neurosurgeon, Dr. Thomas Flynn on November 20, 2003. Dr. Flynn's report stated that his examination of Appellant was normal from an objective standpoint. However, he noted that when he palpated the "neuroma" on Appellant's scalp, he could feel the "bump" and reproduce her symptoms. He found her symptoms to be mild and agreed with Dr. Hajmurad that the only thing she could do was learn to cope with the pain. Dr. Flynn did not recommend any additional treatment, stating that at the time of the examination, he did not feel that her condition was physically disabling.

Appellant continued to suffer from severe pain in her scalp every few weeks. In 2004, when over-the-counter medication failed to relieve the pain, she requested approval to seek medical treatment with Dr. Gerald LeGlue, a physiatrist. Appellee, however, failed to authorize the requested medical treatment on the basis that both Dr. Hajmurad and Dr. Flynn, the physician from whom it obtained its second medical opinion, had released Appellant, and that no further treatment was necessary.

On January 19, 2005, Appellant filed a Disputed Claim for Compensation seeking authorization for the medical treatment with Dr. LeGlue, as well as penalties

2

and attorney's fees based on Appellee's failure to approve necessary medical treatment. After a trial on the merits, the trial court found that Appellant was not entitled to medical treatment with Dr. LeGlue, as it was a request for "future medical treatment." The court further held that Appellant did not show by a preponderance of the evidence that treatment with Dr. LeGlue was reasonable and necessary. Therefore, Appellant's request for payment of the requested medical treatment, as well as her request for penalties and attorney's fees, were denied, and her claim was dismissed with prejudice.

**ASSIGNMENTS OF ERROR**

1) The trial court erred when it held that Appellant was not entitled to treatment from Dr. Gerald LeGlue.

2) The trial court erred when it held that Appellant was seeking approval for future medical care.

3) The trial court erred when it held that Appellant should have provided for her own medical treatment.

4) The trial court erred when it failed to award statutory penalties and attorney's fees.

**STANDARD OF REVIEW**

A workers' compensation judge's finding as to whether a requested medical treatment is necessary is factual in nature. Accordingly, it will not be disturbed on review in the absence of manifest error. *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733.

**LAW AND ARGUMENT**

**Assignment of Error No. 1: The trial court erred when it held that Appellant was not entitled to treatment from Dr. Gerald LeGlue.**

Appellant argues that the court erred in its ruling, and that she is entitled to receive medical treatment from her physician of choice, physiatrist, Dr. Gerald

3

LeGlue. Louisiana Revised Statute 23:1203(A) mandates that an employer provide an injured employee with all necessary medical treatment. To establish a claim for medical benefits, the employee must show to a reasonable certainty and by a preponderance of the evidence, that the benefits are occasioned by the work-related accident and are necessary. *Alleman v. Fruit of the Loom-Crowley*, 96-1246 (La.App. 3 Cir. 3/5/97), 692 So.2d 485. Palliative treatment is included in the types of treatment available to the injured employee. *Barry v. Western Elec. Co., Inc.*, 485 So.2d 83 (La.App. 2 Cir.), *writ denied*, 487 So.2d 441 (La.1986).

In this case, the issue before us is whether the treatment requested by Appellant, Mia Figgins, is reasonable and necessary. If it is, Appellee is required to authorize and pay for the treatment of Appellant's accident-related injury. It is undisputed that Appellant suffered an injury when a box containing stereo equipment fell from a shelf and struck her on the head. Dr. Hajmurad, Dr. Flynn, and Appellant have all testified that Appellant suffered a neuroma, a bruise or injury to a nerve, in her scalp as a result of the accident.

Dr. Hajmurad testified that he initially felt that Appellant's neurological pain was the result of bruises to the superficial sensory nerve incurred from the trauma of her head injury. When Appellant experienced no change in her condition nearly three months later, Dr. Hajmurad suspected that she was suffering from "some type of neuralgia" due to her injury. Dr. Flynn testified in his deposition that his diagnosis of Appellant's condition was the same as that of Dr. Hajmurad. He stated that his inspection and palpation of Appellant's scalp and neck during the November 2003 examination revealed a small neuroma in the scalp just behind the hairline, approximately five centimeters off the mid-line. When he palpated, or pressed on, the

4

neuroma, he could reproduce Appellant's symptoms, and he could feel the "bump" on her scalp. He testified that Appellant's complaints were consistent with the symptoms of a person who suffered from a neuroma.

Appellant argues that she suffers from a clearly identifiable medical problem, for which Dr. Hajmurad opined that she would need continued treatment. She argues that under La.R.S. 23:1121(B)(1), she is entitled to select her treating physician, and that "[d]isagreement between physicians concerning the best method to treat her problem does not mean that treatment should be denied." Appellee counters, arguing that the trial court was correct in determining that medical treatment by Dr. LeGlue, in particular, was neither reasonable nor necessary.

Appellant argues that her treating neurologist, Dr. Hajmurad, opined that she would need continued treatment for her condition, as evidenced by his letter dated February 25, 2002, stating that Appellant was at maximum medical improvement, that she required no work restrictions, and that she could expect to receive medical treatment every six months, as she was still symptomatic. Appellee, however, asserts that this letter "essentially released" Appellant from Dr. Hajmurad's care as of February 25, 2002, indicating that no further medical treatment was necessary. Appellee furthers its claim by asserting that Appellant's pain "remained mild and intermittent" and never increased over the five years Dr. Hajmurad treated Appellant, and that the injury did not affect her daily activities nor her work.

Appellee additionally claims that Appellant has not objectively proven her condition, as her complaints of pain are solely subjective and symptomatic. However, Dr. Hajmurad testified that in a case such as Appellant's, most complaints will be symptomatic and subjective, as a neuroma is "difficult to see." He went on to testify

5

in his deposition that although there is a test for neuralgia, Appellant was not a good candidate for such a test, as it is "very difficult to check the specific nerve," as "this is the distribution of the nerve, like in the scalp." He explained, "You know, this nerve is like the thick of your hair, you know, one of them causing some of the symptoms." However, as stated earlier, Dr. Flynn felt the neuroma on Appellant's scalp during the exam he conducted in November 2003.

Appellee also notes that the trial court, in its reasons for judgment, pointed out that despite Dr. Hajmurad's comment on a possible nerve block, Appellant did not return to him or any physician for treatment. However, Dr. Hajmurad testified in his deposition that at the time he was treating Appellant, he did not feel that she needed a nerve block. He did, however, state that if the pain became more frequent or severe, then he would recommend a nerve block. Appellant testified in her deposition that she, in fact, attempted to return to Dr. Hajmurad's office in 2002, after she moved back to the area from living briefly in Dallas; however, her request was denied by Appellee.

When asked if Appellant could cope with her condition using only over-the-counter medicines, Dr. Hajmurad replied, "Yeah, because she has a mild condition, you know, unless it starts flaring up on her. Sometimes she can come to the doctor and get some stronger pain medicine." He then testified that if the pain became more frequent, more severe, that Appellant should see a doctor.

Dr. Flynn did not recommend additional treatment after he conducted his exam on Appellant, as he felt that her condition was not disabling at the time, though he offered to excise the neuroma if Appellant ever wished to do so. When asked what he recommended in case Appellant could not cope with the pain, he stated that

6

excision of the neuroma would be the appropriate course of action. However, he testified that he would defer to Appellant's treating doctor if he suggested a course of conservative treatment with anti-inflammatory or other medicines.

Appellant points out that she can not go to a doctor to get stronger medications per Dr. Hajmurad's recommendation, as Appellee has refused to authorize her request to see not only physiatrist, Dr. LeGlue, but also Dr. Hajmurad in 2002, claiming that she requires no further medical treatment. Additionally, excision of the neuroma would require a small surgery, a procedure performed by a physician.

Appellant additionally argues that under La.R.S. 23:1121(B)(1), she is entitled to select her treating physician. The statute provides in pertinent part:

> B. (1) The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S.23:1124(B), denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.

Appellant argues that pursuant to La.R.S. 23:1121(B)(1), she has the right to select one treating physician in any field or specialty, and that she is not required to obtain approval to change to another treating physician in another field or specialty. She points out that she has not selected a physiatrist other than Dr. LeGlue, nor has she been treated by a physician in that speciality. Therefore, she maintains that she has the right to select him as her treating physician. Appellee counters, asserting that a claimant's choice of physician under 23:1121(B)(1) must be reasonable and necessary, and that Appellant's request for treatment with Dr. LeGlue is not

7

reasonable or necessary, as he is a physiatrist, whose specialty is physical medicine and rehabilitation. However, Appellee cites no law for this assertion.

Appellee asserts that Appellant only offered the explanation that she had heard that Dr. Le Glue was "good with pain" and was "good at what he does" and that she wanted see him to be prescribed medications. Appellee argues that both Dr. Hajmurad and Dr. Flynn's testimony prove that Appellant could treat her condition with over-the-counter medication, and therefore, treatment with Dr. LeGlue is unreasonable. However, in his deposition, Dr. Hajmurad stated that, although neuralgia can at times resolve itself, if a patient is still symptomatic and experiences pain on an intermittent basis, she needs to see a physician to get prescription medication. While Dr. Flynn stated that although he would not recommend prescription pain medication, there are non-narcotic, analgesic prescription medications in existence that could treat her condition. He would defer to her treating physician if the treating physician suggested a course of conservative treatment with anti-inflammatory or other medications.

Based on the evidence in the record, we find Appellant's request for authorization of medical treatment by Dr. LeGlue is both reasonable and necessary. Appellant has been suffering from neurological pain as a result of a work-related accident for approximately ten years. Dr. Hajmurad described the pain as a "jabbing pain, sharp pain, stabbing pain" that lasts for a period of time ranging anywhere from a several hours to several days at a time. Although it may be "intermittent," occurring only every few weeks, it is clear that the pain is severe. Appellant has testified that when she does experience the pain, she is unable to touch the right side of her head or comb her hair until the swelling reduces.

8

Dr. Hajmurad has not examined Appellant since 2001; Dr. Flynn has not examined Appellant since November 20, 2003. Both Dr. Hajmurad and Dr. Flynn recommended treatments that required the care of a physician in the event that Appellant's pain became more severe or she was no longer capable of coping with it. Appellant has testified that over-the-counter medicines have failed to alleviate her pain.

Additionally, we find that under La.R.S. 23:1121 (B)(1), Appellant has the right to select Dr. LeGlue as her treating physician. Dr. Hajmurad was her physician of choice in 1996. However, Appellant received little to no relief from her symptoms under his care. She has the right to select a treating physician in any field or specialty under the statute, and she has chosen Dr. LeGlue. Therefore, we find that Appellant is entitled to choose Dr. LeGlue as her treating physician under La.R.S. 23:1121(B)(1).

There is nothing in the record to suggest that Appellant's desire to see Dr. LeGlue is based on a desire for secondary gain, as she has never missed any work, has never made a claim for compensation benefits, and is not making such a claim at the present time. There is nothing in the record to suggest that Appellant in engaged in some form of "doctor shopping" as she concedes that the diagnosis by Dr. Hajmurad and Dr. Flynn is the proper diagnosis of her condition and she is not seeking to change this diagnosis. There is also nothing in the record to suggest that she is engaged in "over-medication" of her condition, as she has limited her treatment to over-the-counter medication for the last several years. Her position is that she has followed the advice of Dr. Hajmurad for nearly nine years, that she is still in need of treatment, and that she would like to try a different doctor in a different, but relevant,

specialty to see if it is possible to get better results.

The Appellee's position is that it would be unreasonable for Appellant to see any doctor except Dr. Hajmurad, and indeed, at oral argument, counsel suggested that even this might be unreasonable. We reject Appellee's contention that Appellant's request is unreasonable. Indeed, one would be hard pressed to find a litigant in any reported workers' compensation case making a request as modest, inexpensive, and yes, reasonable, and being denied that request. Appellant has not requested surgery, and she has not requested treatment by a more highly specialized, and therefore, more expensive physician. She has merely requested that she be allowed to see a physiatrist who might help her manage her medical problem within the purview of his specialty. We find this to be a most reasonable request, and conversely, we find the denial by Appellant to be arbitrary and capricious. Therefore, we reverse the ruling of the trial court.

**Assignment of Error No. 2: The trial court erred when it held that Appellant was seeking approval for future medical care.**

Appellee argues that Appellant is seeking an award for future medical treatment and argues that a claimant may not be awarded for future medical treatment. *Jones v. El Mesero Restaurant*, 97-636 (La.App. 3 Cir. 10/29/97), 702 So.2d 1133. In *Jones*, it is suggested that an employer cannot be made to pay medical expenses in advance. The *Jones* court also points out that non-emergency health care costs must be agreed to by the payor, or costs cannot exceed $750.00. La.R.S. 23:1142. In this case, the employee, Appellant, was not attempting to have medical bills paid in advance. Rather, she was attempting to have non-emergency treatment approved as required by La.R.S. 23:1142. Accordingly, we find this assignment has no merit.

10

**Assignment of Error No.3: The trial court erred when it held that Appellant should have provided for her own medical treatment.**

In its reasons for judgment, the workers' compensation court discussed that it had asked Appellant why she did not pay out of pocket for treatment with Dr. LeGlue or seek treatment with another physician if her pain was so severe, suggesting that Appellant's pain is not as severe as she claims. "The workers' compensation scheme was not designed for the worker to pay the costs of his medical treatment. It is the obligation of the employer to pay for the cost of medical services, not the obligation of the employee." *Authement v. Shappert Engineering*, 02-1631 (La. 2/25/03), 840 So. 2d 1181,1188. It is clear that Appellant was injured in the course and scope of her employment and that her injury and resulting symptoms are a result of the on the job accident. Therefore, we find that it is the responsibility of Appellant's employer, Appellee, to pay the costs of her medical treatment. Accordingly, we find that the trial court erred in finding that Appellant should have provided for her own medical treatment.

**Assignment of Error No. 4: The trial court erred when it failed to award statutory penalties and attorney's fees.**

Appellant maintains that pursuant to La.R.S. 23:1201(F), she is entitled to attorney's fees and penalties for Appellee's failure to authorize medical treatment.

> The employer is obligated to "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment and any nonmedical treatment recognized by the laws of this state as legal." LSA-R.S. 23:1203(A). Thus we conclude that a failure to authorize treatment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. Depending on the circumstances, a failure to authorize treatment is

11

effectively a failure to furnish treatment.

*Authement*, 840 So.2d at 1188.

In order to reasonably controvert a claim, a defendant must prove that there was a reasonable basis for its denial of benefits. The critical inquiry is whether the employer was arbitrary, capricious, and without probable cause in withholding or discontinuing its payment of benefits. *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41. As stated earlier, and for the reasons aforementioned, we find that Appellee was arbitrary, capricious, and without probable cause in its denial of medical treatment. Accordingly, we award Appellant penalties and attorney's fees in the total amount of $5,000.00, including work done at the trial level and on appeal.

**CONCLUSION**

For the foregoing reasons, the judgment of the workers' compensation judge is reversed, and the costs of this appeal are assessed to Appellee, Wal-Mart Stores, Inc.

**REVERSED AND RENDERED.**

12