# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-290**

**TIDA ROSE BOURGEOIS**

**VERSUS**

**BROWN'S DELI & MARKET, INC.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 3, PARISH OF CALCASIEU, NO. 05-02850,
HONORABLE CHARLOTTE L. BUSHNELL,
WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Shannon J. Gremillion, Judges.

Amy, J., concurs in part, dissents in part, and assigns reasons.

**AFFIRMED.**

**Mark Zimmerman**
**4216 Lake Street**
**Lake Charles, LA 70605**
**Attorney for Plaintiff/Appellee,**
**Tida Rose Bourgeois**

**Matthew D. Crumhorn**
**Rabalais, Unland and Lorio**
**200 Caroline Court**
**Covington, LA 70433**
**Attorney for Defendant/Appellant,**
**Brown's Market & Deli, Inc.**

**GREMILLION, Judge.**

Brown's Market & Deli, Inc. (Brown's) appeals the judgment of the workers' compensation judge (WCJ) allowing its employee, Tida Rose Bourgeois (Bourgeois), to obtain treatment from a second orthopedic surgeon; ordering that Bourgeois be supplied with a spinal cord stimulator; and assessing Brown's with a $2,000 penalty and $4,500 in attorneys fees for failing to approve the spinal cord stimulator. Bourgeois answered the appeal and requests that we award additional attorney fees for work performed in the appeal. For the reasons that follow, we affirm and award Bourgeois additional attorney fees.

## FACTS

Bourgeois was employed at Brown's when, on January 1, 2005, she slipped on ice while in the freezer. As a result, she sustained a scapholunate dislocation in her left wrist. An orthopedic surgeon, Dr. M. Alan Hinton, performed an open reduction and internal fixation of the dislocation and reconstruction of the scaphoid lunate ligament on January 6, 2005. Dr. Hinton ordered Bourgeois off work.

Soon after surgery, Bourgeois began to complain of left elbow pain. Dr. Hinton ordered an MRI that revealed no injury or defects to the elbow. Dr. Hinton felt these problems were more probably than not related to Bourgeois's wrist trauma.

In March 2005, Bourgeois reported to Dr. Hinton that she was experiencing pain in her left shoulder. Dr. Hinton immediately suspected that Bourgeois was developing or had developed reflex sympathetic dystrophy (RSD), but ordered an MRI of the shoulder to rule out trauma and an EMG/nerve conduction study of the left arm to rule out carpal tunnel syndrome. The MRI ruled out trauma, as Dr. Hinton suspected, and he referred Bourgeois to a pain management specialist for treatment

1

of RSD.

Brown's obtained an independent medical examination (IME) of Bourgeois from Dr. Patrick Juneau, in June 2005. He confirmed the diagnosis of RSD and concurred in the referral to pain management.

Initially, Bourgeois saw Dr. Kevin Gorin for pain management. Dr. Gorin treated Bourgeois until December 2005, when he closed his practice.

Bourgeois's current pain management specialist is Dr. Christopher Y. Lew of Slidell, Louisiana, whom she first saw in February 2006. Dr. Lew confirmed the diagnosis of RSD and began a regimen of treatment.

In March 2006, Bourgeois complained to Dr. Lew—for the first time to any health care provider—of neck pain. During this same visit with Dr. Lew, Bourgeois indicated to him that her attorney suggested that she obtain a second opinion regarding her wrist, as Dr. Hinton had indicated that he had nothing more to offer her. Dr. Lew desired an MRI of the neck, and agreed that a second opinion regarding Bourgeois's wrist would be useful.

Brown's sent Bourgeois back to see Dr. Juneau in May 2006, after the cervical complaints materialized. He saw no causal relationship between the on-the-job accident and the cervical complaints. Dr. Juneau opined that Bourgeois had reached maximum medical improvement (MMI). In addition to Dr. Juneau, Bourgeois was sent to Dr. Sandra Weitz, a pain management specialist of Brown's choosing. Dr. Weitz opined that there was no causal relationship between the cervical complaints and the accident.

In September 2007, the WCJ appointed Dr. Clark A. Gunderson, a Lake Charles orthopedic surgeon, to perform an IME. Dr. Gunderson diagnosed Bourgeois

2

with a complex regional pain syndrome—essentially, RSD—and opined that the late-onset cervical complaints were not related to the on-the-job accident. He further opined that Bourgeois was restricted from lifting more than five to ten pounds, with her right hand only.

In November 2007, Bourgeois returned to Dr. Hinton, who indicated that she continued to have pain, loss of motion and dysfunction in the wrist. He reported that she was not at MMI. However, in April 2008, Dr. Hinton reported to Bourgeois's vocational rehabilitation counselor, Jeanne Tarver, that Bourgeois was at MMI from an orthopedic standpoint.

Dr. Lew disagrees with the other physicians in this matter, and feels that Bourgeois's cervical complaints are the result of "sympathetic cervical disc disease," and are causally related to the on-the-job accident. He also requested that Bourgeois be approved for a trial of a spinal cord stimulator to see whether it would provide any relief from the "chronic pain she has in her neck and to her left upper extremity," resulting from her sympathetic disc disease.

Bourgeois's Disputed Claim for Compensation (Form 1008) was filed in April 2005. In the 1008, Bourgeois requested that she be allowed to seek treatment with Dr. Robert Morrow, an orthopedic hand surgeon in Lafayette, Louisiana, specializing in hand and wrist problems.

The case was tried on submissions, stipulations and briefs. The principal issues were the causal relationship between the cervical complaints and the accident, the referral to Dr. Morrow, the trial of the spinal cord stimulator and penalties and attorney fees. The WCJ found that the cervical complaints were not related to the on-the-job accident, ordered that treatment with Dr. Morrow be authorized and ordered

3

that the spinal cord stimulator be authorized. She also awarded Bourgeois a $2,000 penalty for Brown's refusal to authorize the stimulator and awarded her $4,500 in attorney fees.

## ANALYSIS

**Standard of Review:**

A finding by a WCJ that medical treatment is necessary is reviewed under the manifest error standard. *Figgins v. Wal-Mart*, 06-806 (La.App. 3 Cir. 11/15/06), 945 So.2d 153, *writ denied*, 06-2977 (La. 2/16/07), 949 So.2d 421. That standard requires that the appellate court, in order to reverse, must find that the record reflects that there is no reasonable basis for the WCJ's factual determinations. *Clay v. City of Jeanerette*, 99-1421 (La.App. 3 Cir. 5/31/00), 768 So.2d 609, *writ denied*, 00-2006 (La. 10/27/00), 772 So.2d 124. Similarly, we are bound by the same standard in reviewing a WCJ's assessment of penalties and attorney fees. *Metoyer v. Roy O. Martin, Inc.*, 03-1540 (La.App. 3 Cir. 12/1/04), 895 So.2d 552, *writ denied*, 05-1027 (La. 6/3/05), 903 So.2d 467.

Further, the responsibility of determining which, among differing experts, is most credible is reserved to the trier of fact. *Mistich v. Volkswagen of Germany, Inc.*, 95-0939 (La. 1/29/96), 666 So.2d 1073. If a trial court gives greater weight to one expert's testimony, this finding cannot be reversed absent manifest error. *Gautreau v. Gautreau,* 96-1548 (La.App. 3 Cir. 6/18/97), 697 So.2d 1339, *writ denied,* 97-1939 (La. 11/7/97), 703 So.2d 1272.

The decision to impose penalties is a factual question, which will not be disturbed on appeal in the absence of manifest error. *Frank v. Kent Guidry Farms*, 01-727 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, *writ denied,* 02-1608 (La. 6/27/03),

4

847 So.2d 1273.

**Referral to Dr. Robert Morrow:**

Dr. Lew discussed referring Bourgeois to Dr. Morrow for surgical evaluation in his report of January 19, 2007. That is the only mention of Dr. Morrow in any of Dr. Lew's reports. But it is clear that, although this referral came at the suggestion of Bourgeois's attorney, Dr. Lew thought it prudent.

Dr. Hinton's records contain several inquiries from the third party administrator for Brown's asking whether he had referred Bourgeois to Dr. Morrow. All were answered in the negative. However, his records do not indicate that he disagreed with the referral.

In her report to Brown's dated June 20, 2008, Dr. Weitz opined that Bourgeois' upper extremity complaints result from carpal tunnel syndrome, and that a referral to a hand specialist would be appropriate. The question was apparently never presented to Dr. Gunderson, whose report does not mention a referral.

Thus, Bourgeois's treating pain management specialist opined that a referral to Dr. Morrow would be appropriate. The pain management specialist who provided Brown's with a second opinion concluded that a referral to a pain management specialist was appropriate. We have no other medical opinion on the referral. We, therefore, find that the record reveals a reasonable basis for the finding of necessity of the referral to Dr. Morrow. There is no manifest error in the WCJ's ruling.

**Spinal Cord Stimulator:**

The WCJ's finding that the cervical complaints were not related to the on-the-job accident is not before the Court. Bourgeois does not suggest on appeal that a causal relationship exists. The significance of the cervical complaints is why, if they

5

are not related, the request for a spinal cord stimulator should have been granted and Brown's assessed with penalties and attorney fees for not authorizing one.

Dr. Lew, in a letter dated March 6, 2008, stated:

I am trying to get approved for a spinal cord stimulator trial. The purpose of this is to see whether this modality will give relief for the chronic pain she has in her neck and to her upper left extremity. The current diagnosis for her left upper extremity is symptomatic cervical disc disease with radicular pain in her left upper extremity as well as referred pain into her neck. She also has chronic regional pain syndrome (reflex sympathetic dystrophy) involving the left upper extremity.

Elsewhere in his records, Dr. Lew lists Bourgeois's diagnoses as, "1. Cervical disc disease and cervical radiculopathy. 2. Multifactorial upper and lower extremity pain with reflex sympathetic dystrophy, radiculopathy, and soft tissue pain." Dr. Lew devoted several reports to discussion of the causal relationship between the cervical complaints and the on-the-job accident. Indeed, he devoted enough ink to this issue that one could easily be led to conclude that his treatment of Bourgeois—including the spinal cord stimulator trial—was almost consumed with treating the cervical complaints. Clearly, Brown's sees the stimulator trial as solely intended to treat the cervical complaints. Bourgeois asserts that the stimulator trial has nothing to do with her cervical complaints. This is not the only mention of a spinal cord stimulator trial, though.

Dr. Lew drafted an explanation of the spinal cord stimulator trial that was appended to a report he submitted on January 24, 2008. In that report, Dr. Lew stated that the stimulator was usually intended for relief of severe pain in a limb or limbs, including conditions such as RSD. It also could be useful for certain forms of trunk pain.

Dr. Weitz addressed the origin of Bourgeois's complaints and the need for a

6

stimulator in her report of June 28, 2008. Dr. Weitz opined that Bourgeois's upper extremity complaints result from carpal tunnel syndrome, bulging cervical discs[1] or a combination of the two. However, while she disagreed with the diagnosis of RSD, she did confirm that a stimulator was useful in the treatment of that condition when other modalities had failed.

We note, however, that long before Bourgeois's cervical complaints surfaced, the trial of a spinal cord stimulator had been discussed. Dr. Gorin, in his report of May 17, 2005, to Dr. Hinton discussed the fact that he had successfully utilized a TENS unit to treat Bourgeois. Based upon this success, Dr. Gorin opined that a spinal cord stimulator trial might provide Bourgeois with more relief.

It is clear. The WCJ determined that the spinal cord stimulator trial was intended to treat RSD after weighing the opinions of the doctors. A reasonable basis for this determination is reflected in the record. Therefore, we cannot overturn that finding. Accordingly, the order that Brown's provide the spinal cord stimulator trial is affirmed.

**Penalties and attorney fees:**

An employer is required to furnish reasonable and necessary treatment to its injured employee. Failure to pay medical benefits results in the imposition of a penalty; however, the penalty is not imposed if the claim is reasonably controverted or if nonpayment results from conditions over which the employer or insurer had no control. La.R.S. 23:1201(F)(2). A claim is reasonably controverted when the employer or insurer produces factual or medical information that reasonably counters the claimant's evidence. *Davis v. Jones Baldwin Music Co.,* 27,545 (La.App. 2 Cir.

---

[1] The presence of bulging discs at the C5-6 and C6-7 levels was confirmed in an MRI dated August 10, 2006.

11/1/95), 662 So.2d 803. Brown's presented only Dr Weitz's opinion that Bourgeois did not have RSD, but that if she did, a spinal cord stimulator would be an appropriate treatment when all else had failed. There exists a reasonable basis in the record for the imposition of penalties and attorney fees. There is no manifest error in the award.

**Additional Attorney Fees:**

We have long held that an employee who successfully defends the workers' compensation judge's ruling should be entitled to additional fees. *See Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. Bourgeois is entitled to additional attorney fees in the amount of $3,000.

## CONCLUSION

The weight of the evidence suggests that Bourgeois sustained an injury to her left wrist that evolved into a complex regional pain syndrome, RSD. Brown's is obligated to provide Bourgeois with reasonable and appropriate medical care. This includes the referral to a hand specialist, Dr. Morrow, and providing the spinal cord stimulator trial recommended by Dr. Lew. The failure of Brown's to provide the spinal cord stimulator trial, which had been recommended as far back as 2005—before Bourgeois's neck complaints arose—necessitates the imposition of penalties and attorney fees. Bourgeois is entitled to additional attorney fees in the amount of $3,000. All costs of the appeal are assessed to Appellant, Brown's Deli & Market, Inc.

**AFFIRMED.**

8

NUMBER 09-290

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

TIDA ROSE BOURGEOIS

VERSUS

BROWN'S MARKET & DELI

AMY, J., concurring in part and dissenting in part.

I respectfully dissent from that portion of the majority opinion affirming the worker's compensation judge's determination that the claimant "is entitled to a second choice of orthopedic doctor[.]" Louisiana Revised Statutes 23:1121(B)(1), provides a claimant with the right to "select one treating physician in any field or specialty." After this initial choice, prior consent from the employer must be obtained before the employee may change treating physicians within the same field or specialty. *Id.*

It is unquestioned that the claimant's choice of orthopedist is Dr. Alan Hinton. In reasons for ruling, the workers' compensation judge determined that the claimant's request to see another orthopedist was a "reasonable one and should be authorized by the employer/carrier." However, the reasonableness of the claimant's request for a second choice of physician within a particular field is not the inquiry of the statutory scheme. Rather, La.R.S. 23:1121(B)(1) gives the claimant the right to choose only one physician in given field or specialty. This is true even in instances where a claimant's choice of physician has released him or her to return to work. *See, e.g., Cheatham v. Luberski, Inc.*, 43,603 (La.App. 2 Cir. 9/17/08), 996 So.2d 373; *Wiley v. Kenneth Parker Logging*, 97-1247 (La.App. 3 Cir. 3/6/98), 711 So.2d 297. The statute's limitation to one choice of physician is in place to prevent a claimant from

physician shopping or hopping from one physician to another. *See Smith v. Southern Holding, Inc.*, 02-1071 (La. 1/28/03), 839 So.2d 5.

It is only when an employer's denial of a request to change physicians is not reasonably controverted that the workers' compensation statutes provide further guidance on the issue and, in that instance, the focus is on the reasonableness of the employer's denial of the claimant's request. *See* La.R.S. 23:1201(F) (mandating the assessment of penalties and attorney fees for "failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121" unless the claim is reasonably controverted). This case did not inquire into whether the employer's denial was reasonably controverted, *i.e.*, entitlement to penalties and attorney fees for the denial of the second choice of physician. Instead, it required the workers' compensation judge to determine whether the claimant was entitled to her second choice of orthopedist absent her employer's approval. Under the facts of this case, I find no legal mechanism by which the workers' compensation judge approved the claimant's request.

Accordingly, I would reverse the workers' compensation judge's granting of the claimant's request for a second choice of orthopedist. Like the majority, however, I find that the record supports the workers' compensation judge's award of the spinal cord stimulator as well as the associated penalties and attorney fees. I also join in the majority's award of additional attorney fees for work performed on appeal.

2